Eldonna MOORE, Plaintiff–Appellant,

v.

SITZMARK CORPORATION and
Salomon North America, Inc.,
Defendants–Appellees.

No. 73A01–8908–CV–332.

Court of Appeals of Indiana,
First District.

June 27, 1990.

C. Warren Holland, Michael W. Holland, William J. Rumely, Holland & Holland, Indianapolis, for plaintiff-appellant.

C. Wendell Martin, Amy L. Rankin, Martin, Wade, Hartley & Hollingsworth, Darrell Dean Norris, Brainard & Norris, Indianapolis, for defendants-appellees.

BAKER, Judge.

Plaintiff-appellant Eldonna Moore (Moore) broke her leg in a snow skiing accident. She subsequently brought this suit against defendant-appellees Salomon North America, Inc. (Salomon) and Sitzmark Corporation (Sitzmark), the manufacturer and seller, respectively, of the ski bindings she was using when she broke her leg. The trial court granted summary judgment to Salomon and Sitzmark, and Moore now appeals. We affirm in part and reverse in part.

On February 18, 1986, Moore, an experienced skier, purchased a pair of new downhill skis and new bindings from Sitzmark. Sitzmark installed the bindings, known as Salomon 747 bindings, on the skis, and adjusted them to release based on Moore's weight. At the time of purchase, Moore signed a sales slip which contained the following language.

> I have been instructed in the use of my equipment, I have read the manufacturer's instruction pamphlet (new bindings only), I have made no misrepresentation in regard to my height, weight, age, or skiing ability ... I understand that there are inherent and other risks involved in the sport for which this equipment is to be used, snow skiing, that injuries are a common and ordinary occurrence of the sport and I freely assume those risks. I understand that the ski boot binding system will not release at all times or under all circumstances, nor is it possible to predict every situation in which it will release and is therefore no guarantee for my safety. I therefore release the ski shop and its owners, agents and employees from any and all liability for damage and from the selection, adjustment and use of this equipment, accepting myself the full responsibility for any and all such damage or injury which may result.

Moore admits to having read and understood the sales slip.

On March 1, 1986, Moore went to Sugarloaf Mountain in Michigan and used her new skis and bindings for the first time. She made two uneventful "runs" down the most difficult slope. On her third trip down the slope, however, she took a severe fall, during which the binding on her right ski did not release. As a result of the fall, she suffered a compound fracture of her right femur.

Moore brought suit against Salomon and Sitzmark, alleging theories of negligence and strict liability. The negligence claim against Salomon was premised on negligent design, and the negligence claim against Sitzmark was premised on negligent adjustment of the bindings. In their motions for summary judgment, Salomon and Sitzmark argued that Moore had incurred the risk, and the trial court granted the motions on that basis. On appeal, Moore raises two restated issues for our review. First, whether the trial court erred in finding she had incurred the risk. Second, whether the release of liability Moore signed was effective.

When reviewing a grant of summary judgment, we apply the same standards as the trial court, and examine the pleadings, depositions, answers to interrogato-

ries, admissions, and affidavits filed with the court in the light most favorable to the party opposing summary judgment. *Hatton v. Fraternal Order of Eagles* (1990), Ind.App., 551 N.E.2d 479. Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* When a defendant is the moving party, it is entitled to judgment as a matter of law when it demonstrates one of two things. First, that the undisputed material facts negate at least one element of the plaintiff's claim. Second, the defendant may raise an affirmative defense which bars the plaintiff's claim. 3 W. HARVEY, INDIANA PRACTICE § 56.9 at 629 (1988). If a defendant cannot make one of these showings, summary judgment is improper.

## I. INCURRED RISK

### A. *Strict Liability*

██ Moore argues she incurred only the ordinary risk of falling while skiing. Based on the language in the sales slip's release of liability, Salomon and Sitzmark argue Moore incurred the risk that her bindings could fail to release and that she might suffer harm as a result. Salomon and Sitzmark are correct, but that is not dispositive of the case.

Moore's strict liability theory, based on her allegation that the bindings were defective, is a statutory cause of action controlled by the Indiana Product Liability Act, IND. CODE 33–1–1.5–1 *et seq.* The Act has preempted the Indiana common law of strict liability and "governs all actions in which the theory of liability is strict liability in tort." IND. CODE 33–1–1.5–1. *See Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437. Under the Act,

    (a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

    (1) the seller is engaged in the business of selling such a product; and

    (2) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter.

IND. CODE 33–1–1.5–3(a). IND. CODE 33–1–1.5–2 defines a seller as "a person engaged in business as a manufacturer, a wholesaler, a retailer, a lessor, or a distributor." Accordingly, if Moore can prove the bindings were in a defective condition unreasonably dangerous, Salomon as manufacturer, and Sitzmark as retail seller, will be subject to liability under the Act.

The Act provides that defendants may raise the affirmative defense of incurred risk, as Salomon and Sitzmark did here. "It is a defense that the user or consumer bringing the action knew of the *defect* and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it." IND. CODE 33–1–1.5–4(b)(1) (emphasis added). The party asserting incurred risk bears the burden of proving the defense by a preponderance of the evidence, *Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484, *reh'g granted on other grounds*, 550 N.E.2d 748, and this requires three showings under IND. CODE 33–1–1.5–4(b)(1). First, a plaintiff's knowledge of the defect. *See, e.g., Corbin v. Coleco Industries, Inc.* (7th Cir.1984) 748 F.2d 411. Second, a plaintiff's unreasonable use of the product despite knowledge of the defect. Third, a plaintiff's injuries caused by the product.[1]

██ This is where Salomon and Sitzmark fail. Neither of them asserts that Moore knew of any defect in the bindings, they merely argue Moore knew her bindings would not release under all circumstances.

---

1. In reality, of course, the third element will generally be shown by the plaintiff, requiring the party raising incurred risk to prove only the first two elements.

Absent the threshold showing that Moore knew of a defect in the bindings, neither Salomon nor Sitzmark is entitled to summary judgment on the grounds of incurred risk. The trial court's grant of summary judgment on Moore's strict liability theory was improper.[2]

## B. *Negligence*

■ A similar analysis applies to Moore's negligent design theory against Salomon. A plaintiff may, of course, bring a negligence action against the manufacturer of a product. *See, e.g., Jarrell v. Monsanto Co.* (1988), Ind.App., 528 N.E.2d 1158; *Pfisterer v. Grisham* (1965), 137 Ind. App. 565, 210 N.E.2d 75; *MacPherson v. Buick Motor Co.* (1916), 217 N.Y. 382, 111 N.E. 1050. Such an action is not subject to the terms of the Indiana Product Liability Act; rather, it is a common law action. *Koske, supra,* 551 N.E.2d at 443. In turn, the manufacturer may raise the defense of incurred risk. *See Pfisterer, supra.* In a negligence action, the defense of incurred risk is specifically subject to the terms of the Comparative Fault Act. *See* IND. CODE 34–4–33–2(a).

■ As all the parties to this dispute correctly point out, incurred risk involves a mental state of venturousness on the part of the actor against whom it is asserted, and requires a subjective analysis of the actor's actual knowledge and voluntary acceptance of the risk. *Get–N–Go, supra; Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241; *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004. As

with the parties' dispute over incurred risk in the context of a strict liability theory, the question here revolves around the proper definition of the risk that may or may not have been incurred.

■ As we have already discussed, by signing the release in the sales slip, Moore incurred the risk that her bindings would not release under all circumstances and that she might suffer injuries in the event of a failure to release. This was merely an acknowledgement of the laws of physics, however. There is no evidence Moore knew of any alleged negligent design of the bindings. Salomon argues vigorously that Indiana case law defines the risk as solely the risk of injury, not the risk of negligence.[3] Salomon is mistaken.

In *Pfisterer, supra,* the plaintiff lost part of her finger while using a slide at the defendants' resort park. The plaintiff had used slides before, but had never used the slide which injured her prior to the time of injury. In discussing the defense of incurred or assumed risk, the court held the plaintiff "assumed or incurred the risks inherent and incident to the use of this slide, but she did not assume or incur the risk that the slide might be defectively constructed. [She] could not assume or incur the risk of a latent defect of which she had neither notice nor knowledge, either express or implied."[4] *Pfisterer, supra,* 137 Ind.App. at 572, 210 N.E.2d at 78–79.

■ Similarly, the evidence most favorable to Moore reveals she had no knowl-

2. If, upon remand, Salomon and Sitzmark are able to prove Moore incurred the risk of a defect in the bindings, this will act as a complete bar to Moore's strict liability claim. The Comparative Fault Act, IND. CODE 34–4–33–1 *et seq.,* does not include strict liability theory actions, but only those actions based on fault. *See* IND. CODE 34–4–33–1.

3. Salomon and Sitzmark make much of the voluntariness of Moore's actions (i.e., purchasing the bindings, signing the release, and skiing for pleasure) in incurring the risk of her bindings failing to release. It is hornbook law that actions which are not truly voluntary do not amount to an incurrence of risk. *See, e.g., Get–N–Go, supra; Richarson v. Marrell* (1989), Ind.

App., 539 N.E.2d 485, *trans. denied; St. Mary's Byzantine Church v. Mantich* (1987), Ind.App., 505 N.E.2d 811, *trans. denied.* Moore's actions were indeed voluntary, but this is immaterial; the proper definition of the risk is the dispositive issue in this case.

4. The plaintiff was 13 years old at the time of the accident. The court, however, did not in any way rely on the plaintiff's youth as a basis for its decision.

In a similar case, the Missouri Court of Appeals held a high school pole vaulter assumed the inherent risks of pole vaulting, but not the risks of the manufacturer's negligence. *McCormick v. Lowe & Campbell Athletic Goods Co.* (1940), 235 Mo.App. 612, 144 S.W.2d 866.

edge of any negligent design flaws in the bindings. Moreover, she had not fallen while using the new bindings prior to the fall which injured her. Even if she had, assuming any defect was latent, she could not incur the risk of the defect without notice of the defect.[5] Moore did not incur the risk of negligent design by Salomon. The trial court's grant of summary judgment to Salomon on Moore's negligence theory was improper.

## II. EFFECT OF RELEASE

Moore's negligence complaint against Sitzmark alleged Sitzmark had been negligent in setting, adjusting, or checking the bindings. These alleged acts of negligence are exactly those for which Moore granted Sitzmark a release of liability when she read and signed the sales slip. This release was valid under Indiana law, *LaFrenz v. Lake Cty. Fair Bd.* (1977), 172 Ind.App. 389, 360 N.E.2d 605, and the trial court properly granted summary judgment to Sitzmark on Moore's negligence theory.

The trial court's summary judgment in favor of Sitzmark on Moore's negligence theory is affirmed. The trial court's summary judgment in favor of Sitzmark on Moore's strict liability theory, and in favor of Salomon on both Moore's strict liability and negligence theories is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

RATLIFF, C.J., and HOFFMAN, P.J., concur.

---

**5.** If any defect was open and obvious under the rule enunciated in *Bemis Co. v. Rubush* (1981), Ind., 427 N.E.2d 1058, 1061, *cert. denied* (1982), 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, Moore may not recover on her negligence theory. *Koske, supra,* did not abrogate the open and obvious rule, but rather held it inapplicable to actions under the Indiana Product Liability Act. The rule is still applicable in product negligence liability cases. *Koske, supra,* 551 N.E.2d at 443. *See Also Bridgewater v. Economy Eng'g Co.* (1985), Ind., 486 N.E.2d 484, *modified on other grounds in Get-N-Go, Inc. v. Markins* (1990), 550 N.E.2d 748.