**Jackie (Campbell) SCHOOLEY, Appellant–Plaintiff,**

v.

**INGERSOLL RAND, INC. and Mauer Industrial Supplies, Inc., Appellees– Defendants.**

No. 46A04–9301–CV–20.

Court of Appeals of Indiana, Fourth District.

March 29, 1994.

Douglas A. Mulvaney, Stutsman & Mulvaney, Elkhart, for appellant-plaintiff.

Frederick D. Emhardt, Foley & Pool, Indianapolis, for appellees-defendants.

RILEY, Judge.

## STATEMENT OF THE CASE

Plaintiff–Appellant Jackie Campbell Schooley (Schooley) appeals the trial court's grant of summary judgment in favor of Defendants–Appellees Ingersoll Rand, Inc. (Ingersoll) and Mauer Industrial Supplies, Inc. (Mauer). We reverse and remand.

## ISSUES

Schooley raises the following restated issues for our review:

1. Whether the trial court erred in determining as a matter of law that the hoist hook involved in the accident had been substantially altered;

2. Whether the trial court erred in determining as a matter of law that the danger was open and obvious, thus negating her negligence claim;

3. Whether her negligence and product liability claims were barred by the doctrine of incurred risk; and

4. Whether Ingersoll and Mauer breached the duty to warn.

Ingersoll and Mauer contend the trial court correctly granted summary judgment in their favor and raise the following issue:

1. Whether Schooley's product negligence and strict liability claims were barred because neither Ingersoll nor Mauer proximately caused her injuries.

## FACTS AND PROCEDURAL HISTORY

In August, 1983, Schooley was injured during the course of her employment with Arrow Tool Company (Arrow Tool). She was directed by her supervisor to clean and move a 1500 pound steel plate hanging on a hoist hook. She observed that the plate was not restrained by the chains typically attached to both the hook and the plate, but was hanging on the hook. Realizing the danger of moving the plate, but with the belief that the job could be safely accomplished, Schooley began to operate the hoist upon which the hook was attached. The plate came loose from the hook and fell on her. Schooley's right foot was sheared at the ankle, leaving only the main artery intact. Following surgery,

Schooley's foot was reattached, leaving her with a twenty-five percent permanent partial impairment of her right leg below the knee.

Schooley brought a product strict liability and product negligence suit against Ingersoll, the manufacturer of the hoist hook, Maurer, the supplier of the hoist hook, and others. The trial court granted summary judgment in favor of Ingersoll and Maurer, and dismissed the case against the other defendants.[1] In granting summary judgment, the trial court stated:

1. The Court has jurisdiction to hear and determine cases of the general class of the proceedings to which this case belongs and there has been sufficient notice over the parties or they have entered their appearance in this case.

2. There is no genuine issue of material fact as to the following:

(a) That the hoist hook was designed to have a safety latch;

(b) That the hoist hook when purchased by Arrow Tool had a safety latch;

(c) That at the time of the accident, there was no safety latch on the hoist hook;

(d) That at the time of the accident, the hoist hook was substantially altered from its original condition;

(e) That the danger of lifting the steel plate by the plaintiff was open and obvious;

(f) That the defendant[s] [are] entitled to judgment as a matter of law.

(R. 786–787).

Additional facts are presented below as needed.

## STANDARD OF REVIEW

The issue before the trial court was whether the facts presented when viewed in the light most favorable to Schooley, the non-moving party, presented any genuine issue of material fact. *See Northern Indiana Public Service Co. v. East Chicago Sanitary District* (1992), Ind.App., 590 N.E.2d 1067, 1071. Even if the facts are not in dispute, summary judgment is inappropriate if conflicting inferences could be drawn from those facts. *Newhouse v. Farmers National Bank* (1989), Ind.App., 532 N.E.2d 26, 28.

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. Ind.Trial Rule 56(C); *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 12, *trans. denied.* The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. T.R. 56(C); *Campbell v. Criterion Group* (1993), Ind.App., 613 N.E.2d 423, 428, *on reh'g* 621 N.E.2d 342. Once the moving party makes a prima facie showing of the non-existence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); *Campbell*, 613 N.E.2d at 428.

On appeal, we are bound by the same standard as the trial court and we must consider all matters which were designated at the summary judgment stage in the light most favorable to the non-moving party. T.R. 56(C); *Campbell*, 613 N.E.2d at 428. On appeal, however, the party that lost in the trial court has the burden to persuade the appellate tribunal that the trial court erred. *Id.* (quoting *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190). Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. T.R. 56(C); *Fawley*, 618 N.E.2d at 12. Our role is to closely scrutinize the trial court's determination in order to assure that Schooley was not improperly denied her day in court. *See, Campbell*, 613 N.E.2d at 428.

## DISCUSSION AND DECISION

### I. PROXIMATE CAUSE [2]

Ingersoll contends that summary judgment was proper because Schooley failed to show that the alleged defect in the hoist hook was the proximate cause of her injuries.

---

1. Hereinafter, Ingersoll and Mauer will be referred to collectively as "Ingersoll."

2. We discuss this issue first because causation is integral to all other issues.

Ingersoll argues that Arrow Tool's failure to replace the hoist hook's safety latch operated as a superseding cause of Schooley's injuries.

 Proximate cause rules applicable to negligence actions are also applicable to strict product liability actions. *Montgomery Ward & Co. v. Gregg* (1990), Ind.App., 554 N.E.2d 1145, 1156, *reh'g denied, trans. denied.* Proximate cause is established if the injury to the plaintiff is a natural and probable consequence of the defendant's act or omission "which was, or should have been, reasonably foreseen or anticipated in light of attendant circumstances." *Id.* (citing *Conder v. Hull Lift Truck, Inc.* (1982), Ind., 435 N.E.2d 10, 14). The intervening act or omission of a third party will not operate to defeat recovery from the defendant if the act or omission would necessarily, or might reasonably, have been foreseen by the defendant. *Conder,* 435 N.E.2d at 14 (citing *Shanks v. A.F.E. Industries,* Inc. (1980), Ind. App., 403 N.E.2d 849, *rev'd on other grounds,* 275 Ind. 241, 416 N.E.2d 833). The foreseeability of an intervening act or omission is usually a question for jury determination. *Montgomery Ward,* 554 N.E.2d at 1156.

In the present case, Professor Allen McDonald stated during his deposition that Schooley's accident could have been prevented had a safety latch been present on the hoist hook. Furthermore, he stated that the screw used to hold the safety latch in place was not strong enough for the assigned task. Harry Leidich, a design engineer for Ingersoll, stated in his deposition that hoist hooks manufactured by Ingersoll would have been equipped with safety latches. He acknowledged, however, that the safety latches were very fragile and were frequently damaged in use. He further acknowledged that they are missing in many industrial plants. Leland Slough, the owner of Arrow Tool, could not recall whether the hoist hook used by Schooley at the time of the accident came equipped with a safety latch; however, he believed the latch was not standard on all hoist hooks. Schooley stated that she had not seen safety latches on any of the hoist hooks used at Arrow Tool and she was not cognizant of their existence in general.

The facts discussed above establish a basis for a jury determination that the accident would not have happened if the safety latch would have been in place on the hoist hook used by Schooley. The same facts would also support a determination that Ingersoll manufactured hoist hooks which were equipped with safety latches that were easily broken. Furthermore, a jury determination could be warranted that Ingersoll knew that the safety latches would be broken and would not be repaired. In short, there is sufficient designated evidence to establish genuine issues of material fact on the question of proximate cause.

## II. SUBSTANTIAL ALTERATION

 Schooley contends the trial court erred in concluding that the hoist hook was substantially altered after its sale to Arrow Tool. She argues that a product is not "substantially" altered if the manufacturer of the product could foresee the alteration.

Legislation imposing strict liability in product liability actions is found at IND. CODE 33–1–1.5–1 *et seq.* I.C. 33–1–1.5–3 states:

(a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) the seller is engaged in the business of selling such a product; and

(2) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter.

(b) The rule stated in subsection (a) applies although:

(1) the seller has exercised all reasonable care in the preparation, packaging, labeling, instructing for use, and sale of his product; and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

There are numerous defenses to strict liability. The defense pertinent to the issue of substantial alteration is found at I.C. 33–1–1.5–4(b)(3), which states:

[I]t is a defense that a cause of the physical harm is a modification or alteration of the product made by any person after its delivery to the initial user or consumer if such modification or alteration is the proximate cause of physical harm where such modification or alteration is not reasonably expectable to the seller.

■■■■ Substantial change or alteration is defined as "any change which increases the likelihood of a malfunction, which is the proximate cause of the harm complained of, and which is independent of the expected and intended use to which the product is put." *Montgomery Ward*, 554 N.E.2d at 1157 (quoting *Cornette v. Searjeant Metal Products, Inc.* (1970), 147 Ind.App. 46, 258 N.E.2d 652). In a strict liability case, liability can be imposed on the manufacturer or seller "even though [a] product is altered or changed if it is foreseeable that the alteration would be made and the change does not unforeseeably render the product unsafe." *Craven v. Niagara Machine and Tool Works, Inc.* (1981), Ind.App., 425 N.E.2d 654, 655, *reh'g denied, trans. denied.* The question involved "is whether the alteration of the product was a superseding cause." *Id.* The issue of foreseeability is normally a question of fact appropriate for determination by the jury. *Montgomery Ward*, 554 N.E.2d at 1156.

As stated in our discussion of Issue I, there was evidence designated for the trial court's review from which a jury could find that Ingersoll knew of the weaknesses in its safety latches and the infrequency of replacement by the companies using its hoist hooks. It follows that a jury could find that the breakage of the safety latch and the failure to replace the same were foreseeable. Thus, the evidence establishes genuine issues of material fact on this issue which must be decided by a jury.

Ingersoll argues that even if the change in the hoist hook was foreseeable, Schooley still may not prevail. Ingersoll relies on *Conder*, 435 N.E.2d 10, wherein our supreme court held that liability would not attach where a foreseeable change would be apparent to the user of the product. *Id.*

In the present case, there is evidence that indicates that Schooley was not aware of the change in the hoist hook because she had never observed a hook with its safety latch intact. The question of whether the absence of the safety latch was apparent is one for the jury.

### III. OPEN AND OBVIOUS RULE

■■■■ Schooley contends the trial court erred in granting summary judgment for Ingersoll on the basis that her product negligence claim was barred by the open and obvious rule. Schooley argues that the open and obvious rule does not apply to product negligence cases. Alternatively, she argues, that even if the rule applies, a question of fact exists as to whether the danger was open and obvious to her at the time of her accident.

The open and obvious rule was articulated in *Bemis Co. v. Rubush* (1981), Ind., 427 N.E.2d 1058, *cert. denied* (1982), 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, as follows:

... the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all.

427 N.E.2d at 1061.

In *Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437, our supreme court considered the question of whether the open and obvious rule applied to strict liability product cases. The court determined that since the rule was not one of the defenses expressly delineated in the Indiana Product Liability Act, it was not applicable. 551 N.E.2d at 442. The court did not expressly rule on the question of whether the rule applied to product negligence cases. 551

N.E.2d at 443, n. 4. However, three weeks later, in *Miller v. Todd* (1990), Ind., 551 N.E.2d 1139, 1143, *reh'g denied*, the court held that the rule was applicable in such cases.

 The test for whether a danger is open and obvious is an objective one, based on what the user should have known. *Ragsdale v. K-Mart Corp.* (1984), Ind.App., 468 N.E.2d 524, 527. The application of the open and obvious rule may be, but is not always, a question of law for the court. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484, 488, *reh'g denied; McDonald v. Sandvik Process Systems, Inc.* (7th Cir. 1989), 870 F.2d 389, 393. " 'When the facts or the reasonable inferences to be drawn therefrom are in conflict, the open and obvious nature of the danger is a question of fact' for the jury.' " *Lilge v. Russell's Trailer Repair, Inc.* (1991), Ind.App., 565 N.E.2d 1146, 1150 (quoting *FMC Corp. v. Brown* (1988), Ind.App., 526 N.E.2d 719, 724, *affirmed* (1990), Ind., 551 N.E.2d 444).

In the present case, Ingersoll designated evidence showing, at least in the opinion of an Ingersoll engineer, that the danger of using a hoist hook without a safety latch in the manner used by Schooley, was open and obvious. Thus, Ingersoll argues that as a matter of law it did not need to provide a warning to Schooley of the danger.

Schooley responds by pointing to evidence showing that at that time of the accident there were no safety latches on the hoist hooks in the plant where she worked and that she had no knowledge of their existence in general. Thus, she concludes that the increased danger of operating a hoist hook without a safety latch was not something she should have known.

Schooley knew that using a hoist hook to move a 1500 pound plate was potentially dangerous. She also knew that moving a plate which was not attached to the hook by chains had even more potential for danger.

However, movement of the plate with the hook was part of her job and had been accomplished safely on many other occasions.

As we have noted above, the movement of the plate without the chains arguably could have been accomplished safely if the safety latch had been in place. However, the-fall of the plate from the hook without the safety latch was arguably inevitable. The question of whether Schooley should have recognized this inevitability is a question for the jury to decide by weighing the evidence provided by Ingersoll's expert against the evidence that the presence of safety latches was not common in the plant. We cannot say that the danger presented by the absence of the safety latch was open and obvious as a matter of law. Thus, the trial court erred in granting summary judgment on this basis.[3]

## IV. INCURRED RISK

 As we noted above, the trial court granted summary judgment for Ingersoll on the twin bases of substantial alteration and the open and obvious rule. Even though these bases for the trial court's grant were improper, we are not precluded from affirming if there is any other basis for summary judgment evident in the designated evidence. *P.M.S., Inc. v. Jakubowski* (1992), Ind.App., 585 N.E.2d 1380, 1381 n. 1.[4] In acknowledgement of the potential for affirmance of summary judgment on a previously unmentioned basis, Schooley has provided argument on the presence of genuine issues of material fact on the issue of incurred risk. Not surprisingly, Ingersoll counters with arguments to the contrary.

. Incurred risk is a defense to both product negligence and product strict liability claims. *See Montgomery Ward*, 554 N.E.2d at 1151. While the defense is found in our common law as it pertains to negligence, it is codified by statute as it pertains

---

**3.** We note that since Schooley's injuries happened prior to January 1, 1985, the comparative fault act does not apply. I.C. 34-4-33-1(a)(2).

**4.** Although it is an aid to appellate review when the trial court specifically states the legal basis

for granting summary judgment, there is no requirement that the trial court do so. *Ferguson v. Modern Farm Systems, Inc.* (1990), Ind.App., 555 N.E.2d 1379, 1380-1381 n. 1., *trans. denied.*

to strict liability.[5] The defense "involves a mental state of venturousness on the part of the actor, and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk." *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552, 554 (quoting *Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241, 1243). It can be found as a matter of law "only if the evidence is without conflict and the sole inference to be drawn is that the plaintiff a) had actual knowledge of the specific risk, and b) understood and appreciated the risk." *Stainko v. Tri–State Coach Lines, Inc.* (1987), Ind.App., 508 N.E.2d 1362, 1365, *reh'g denied, trans. denied.*

This court has recognized that the responsibilities and influences arising from involvement in the workplace can be determinative as to the voluntariness of an employee's actions. Thus, we have held that the issue of whether an employee has incurred the risk of an activity incidental to his or her employment is a question of fact for the jury to decide. *See Richardson v. Marrell's, Inc.* (1989), Ind.App., 539 N.E.2d 485, *trans. denied* (fact question as to whether employee who slipped on ice while making delivery incurred risk of slipping); *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004, *reh'g denied* (fact question as to whether employee incurred risk of injury by operating defective forklift in congested area); *Meadowlark Farms, Inc. v. Warken* (1978), 176 Ind.App. 437, 376 N.E.2d 122 (issue of whether plaintiff assumed risk as an incident of sharecropping agreement was for jury). We have also recognized that prior knowledge of specific dangers of a job and acceptance of these dangers warrants a finding of incurred risk as a matter of law. *Ferguson,* 555 N.E.2d at 1381–1382 (worker who used ladder which he knew was not equipped with safety cage incurred risk as a matter of law).

In the present case, Schooley was near the end of her shift when she was asked by a supervisor to turn the steel plate and clean it. She recognized the possibility of the plate slipping from the hoist hook and falling down to the skid below, but she felt that the she could safely complete the job by standing to the side of the plate and keeping tension on the hoist. At no time did she contemplate that the steel plate would slip from the hoist hook, turn when it hit the skid, and fall to the side where she was standing. Schooley was trying to do the job she was ordered to do at the time of her injury and, unlike the employee in *Ferguson,* she was not aware of the specific risk of using a product which was lacking a safety device. Furthermore, she was not aware of the risk that a 1500 pound plate would fall to the side in the manner in which it did.

The question of whether Schooley voluntarily incurred the risk of her injuries is a fact question for the jury. She did not incur the risk as a matter of law.

## V. PRODUCT WARNINGS

Ingersoll contends that as a matter of law that it had no duty to warn Schooley not to use the hoist hook without a safety latch. Schooley contends that there is an issue of material fact for the jury as to whether the hoist hook was defective because of Ingersoll's failure to warn.

I.C. 33–1–1.5–2.5(b)(1) provides a duty to "properly package or label the product to give reasonable warnings of danger about the product ... when the seller, by exercising reasonable diligence, could have made such warnings (or instructions) available to the user or consumer." A product may be defective if there is a failure to warn or instruct of potential and unknown dangers in the product's use, even if the product's design, materials, and workmanship are virtually faultless. *Jarrell v. Monsanto Co.* (1988), Ind.App., 528 N.E.2d 1158, 1166, *reh'g denied, trans. denied.* The duty to warn is normally non-delegable. *Id.*

There is no evidence of a warning in the materials designated to the trial court for summary judgment. Leidich, Ingersoll's engineer, stated in his deposition that a basic warning should put the user on notice that

---

**5.** I.C. 33–1–1.5–4(b)(1) provides that it is a defense to a strict product liability claim that "the user or consumer bringing the action knew of the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it."

the hook should not be used if the safety latch is missing or if parts are missing or damaged. When asked if he knew whether this type of warning was on the hoist or hook, he stated that he did not know. Furthermore, even though Ingersoll did send material containing warnings to the plant's safety director, it did not send a warning directed to the danger of the hook when the safety latch was not intact.

Ingersoll contends that it was not required to give a warning because the danger of using the hook without a safety device was known. However, as we noted above, the issue of Schooley's knowledge about the limitations of the hook, whether in light of what she should have known or what she actually knew, is a genuine issue of material fact to be determined by a jury.

### CONCLUSION

The trial court erred in finding that there were no genuine issues of material fact in regard to Schooley's product negligence and strict liability claims. Questions of fact must be decided by the jury pertaining to causation, the lack of warnings, and the presence of defenses. Accordingly, the trial court's grant of summary judgment is reversed.

Reversed and remanded for further proceedings.

CHEZEM and ROBERTSON, JJ., concur.