**Kimberly ANDERSON, Personal Representative of the Estate of Terry Joe Anderson, Deceased, Plaintiff,**

v.

**P.A. RADOCY & SONS, INC., Miller Electric Mfg. Co., Waldrum Sign Co., and James W. Cunningham, Trustee for Waldrum Sign Co., Defendants.**

No. 1:93–CV–287.

United States District Court, N.D. Indiana, Fort Wayne Division.

Sept. 15, 1994.

Robert O. Vegeler, Beers Mallers Backs and Salin, Fort Wayne, IN, for Kimberly Anderson.

Edward L. Murphy, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, for P.A. Radocy & Sons, Inc.

James L. Peterson, Ice Miller Donadio and Ryan, Indianapolis, IN, for Miller Elec. Mfg., Co.

Charles B. Hendricks, Dawson Sodd Canazos and Hendricks, Dallas, TX, for Waldrum Sign Co.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants Radocy's and Miller's Motions for Summary Judgment. For the following reasons, defendants' Motions for Summary Judgment are granted.

## SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

■ So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there are exists a genuine issue necessary to be litigated. *See Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

■ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-

moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

## BACKGROUND

Terry Anderson (hereinafter Anderson) was employed by Burkhart Advertising, Fort Wayne Sign Division, as a service man. He became a journeyman sign electrician for the company in 1990. In this capacity, Anderson had a working knowledge of electricity. Scott West (hereinafter West) was also employed by Burkhart as a journeyman sign electrician.

On November 19, 1991, Anderson and West went to Builders Square in Fort Wayne, Indiana, to repair the Builders Square main I.D. sign. Anderson and West were using a Radocy crane/truck with a sixty-five (65) foot crane and a metal basket attached to it. The crane/truck was also equipped with a generator manufactured by Miller Electric. West was aware that the crane had a metal basket and that the crane arm was not insulated. West was also aware that the generator had no ground fault interrupter (hereinafter GFI).

Upon arriving at Builders Square, Anderson and West determined that a portion of the sign was unlighted, possibly due to a short. Anderson then went up in the bucket of the crane to inspect the sign. At this time, a portion of the sign was still illuminated. After removing the side trim and bottom trim from the sign, Anderson received a shock as he was taking the sign apart. After Anderson told West he had received a shock, West disconnected the power from the sign.

When the repair work on the sign was completed, West plugged the sign back into the generator on the truck. Anderson then reached into the sign, evidently to retrieve his tools, and was fatally electrocuted. At the time of the electrocution, Anderson was standing in the metal bucket.

## DISCUSSION

**I.** *Anderson's Negligence Claims Are Barred Under the Open and Obvious Danger Rule.*

Radocy and Miller claim that the open and obvious danger rule is applicable in a products liability action based on common law negligence. They argue that the alleged defects in the crane/truck and generator were of such a nature that they were open and obvious to the ordinary user and consumer of the product, who in this case was Anderson. Specifically, Radocy and Miller contend that: (1) the danger of repairing charged electrical signs while standing in a metal basket was open and obvious; (2) the fact that the crane's boom arm was uninsulated and provided no protection to someone working on the crane was open and obvious; and (3) the absence of a GFI on the generator was also open and obvious to the ordinary consumer. Finally, Radocy and Miller claim that the danger "was made painfully obvious by the fact that Anderson was shocked while working on the sign … shortly before the incident which caused his death." Radocy Brief, p. 7.

In response, the plaintiff claims that neither Anderson nor West contemplated the possibility of electrocution and that, given the safety measures that should have been followed, the crane/truck was more dangerous than contemplated by ordinary users such as Anderson and West. The plaintiff suggests that merely because Anderson had some working knowledge of electricity and was a journeyman sign electrician did not mean that he should have realized the crane/truck would not protect him from electrocution. Anderson also claims that *Miller v. Todd,* 551 N.E.2d 1139 (Ind.1990), is not applicable because it was decided before enactment of the Comparative Fault Act, IC 34–4–33, which governs the negligence count, and therefore defendants' reliance on *Miller* is misplaced. Anderson cites *Moore v. Sitzmark Corp.,* 555 N.E.2d 1305 (Ind.App.1990), for the proposition that the alleged defect was latent and, therefore, not open and obvious. The plaintiff further contends that Anderson's appreci-

ation and understanding of the possibility of electrocution is a question of fact for the jury to determine with respect to comparative fault. Anderson admits that "it is true that the metal basket, the metal crane arm, and the lack of a [GFI] in the Miller generator were reasonably apparent," but claims that the extent to which the combination of these factors would allow electrocution is not open and obvious.

In reply, Radocy claims that whether or not Anderson actually comprehended the possibility of suffering a fatal electrocution is not at issue because the subjective knowledge of Anderson is irrelevant in determining whether the alleged defects were open and obvious. Additionally, Radocy states that the question of whether a danger is open and obvious is the same as the question of whether a danger is concealed or hidden (citing *Bridgewater v. Economy Engineering Co.*, 486 N.E.2d 484 (Ind.1985)) and claims that none of the alleged defects were concealed, hidden, or latent. Radocy also contends that if, as Anderson admitted, the individual dangers of the three alleged defects were open and obvious, then the dangers created by the combination of the three defects were also open and obvious. Also, Radocy criticizes Anderson's reliance on *Moore* as misplaced because *Moore* dealt with incurred risk and not the open and obvious danger rule. Finally, Radocy claims that the advent of the Comparative Fault Act does not preclude an open and obvious danger defense because determination of the open and obvious danger goes to whether or not a product is defective and does not establish the defense of incurred risk.

 The court finds that the open and obvious danger rule is applicable in a products liability claim based on common law negligence. *Schooley v. Ingersoll Rand, Inc.*, 631 N.E.2d 932 (1994); *Miller*, 551 N.E.2d at 1143; *Bridgewater*, 486 N.E.2d at 489 (Ind.1985). The application of the open and obvious danger rule may be, but is not always, a question of law for the court. *Schooley*, 631 N.E.2d at 939 (citing *Bridgewater*, 486 N.E.2d at 939; *McDonald v. Sandvik Process Systems, Inc.*, 870 F.2d 389, 393 (7th Cir.1989)). The open and obvious

nature of the danger is a question of fact for the jury when the facts or the reasonable inferences to be drawn from the facts are in conflict. *Id.*, 631 N.E.2d at 639 (citing *Lilge v. Russell's Trailer Repair, Inc.*, 565 N.E.2d 1146, 1150 (Ind.App.1991)).

 As articulated in *Bemis Co. v. Rubush*, 427 N.E.2d 1058, 1061 (Ind.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), for liability to attach,

the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all.

Whether a danger is open and obvious and whether a danger is concealed or hidden are two sides of the same coin. *McDonald*, 870 F.2d at 393; *Bridgewater*, 486 N.E.2d at 488. The test for whether a danger is open and obvious is an objective one, based on what the user should have known. *Schooley*, 631 N.E.2d at 939; *Ragsdale v. K–Mart Corp.*, 468 N.E.2d 524, 527 (Ind.App.1984).

 Thus, the question is not a subjective one as to whether Anderson was aware of the exact injury he could suffer as a result of the alleged defects. The inquiry is an objective one: whether the three alleged defects were so open and obvious that ordinary users, given their reasonably anticipated knowledge and behavior, should have known of the dangers. In this inquiry, it is helpful for the court to look to whether the defects were hidden or concealed.

 Defendants Radocy and Miller claim that the three alleged defects were open and obvious: the danger of repairing charged electrical signs while standing in a metal basket; the fact that the crane's boom arm was uninsulated and provided no protection to someone working on the crane; and the absence of a GFI on the generator. Anderson admits that "it is true that the metal basket, the metal crane arm, and the lack of a [GFI] in the Miller generator were reasonably apparent," but claims that the

extent to which the combination of these factors would allow electrocution is not open and obvious. Radocy replies that if the individual dangers of the three alleged defects were open and obvious (as Anderson stated), then the dangers created by the combination of the three defects were also open and obvious.

Radocy and Miller have submitted evidence to show that the defects alleged by the plaintiff should have been perceived by the ordinary user. Plaintiff's expert, Orville Detraz, stated that a person who worked on electrical signs and had an extensive electrical background would know that a metal bucket presented more of a risk of electrocution than a fiberglass bucket. Deposition of Orville Detraz, at 191–92. Detraz also testified that someone in Anderson's or West's position would know of the risk posed by the lack of a GFI. *Id.* at 192. In addition, West stated that he was aware that there was no GFI on the generator. Deposition of Scott West, at 26. West also stated that he knew he could get a shock from an energized sign while standing in the metal basket. Deposition of Scott West, at 22. Furthermore, the plaintiff admits that "[i]t is true that the metal basket, the metal crane arm and lack of a [GFI] in the Miller generator were reasonably apparent," Plaintiff's Brief in Opposition, p. 7, and concedes that "West and Anderson realized that the metal basket and metal crane arm would not provide them with any protection from an electrical shock. *Id.* at 8. These admissions, combined with Scott West's and Orville Detraz's depositions, support defendants' claim that the defects were not latent, hidden, or concealed, but were in fact open and obvious.

In response, Anderson does not proffer any evidence to contradict the defendants' claim that the ordinary user would anticipate the dangers posed by the metal basket, the uninsulated crane arm, and the absence of the GFI. The plaintiff instead states that "[w]hat is not open and obvious is the extent that [the combination of the three defects] would obviously allow electrocution to Anderson ..." Plaintiff's Brief in Opposition, p. 7. The plaintiff argues that Anderson did not anticipate being electrocut-

ed; all he contemplated was being "tingled" by a milder electrical shock than that which would result in fatal electrocution. This argument, however, goes to the degree of the injury, not the openness and obviousness of the alleged defect. It also requires a subjective evaluation of Anderson's beliefs which are not determinative under the open and obvious danger rule.

In *Miller*, 551 N.E.2d at 1139, a motorcycle passenger who received injuries when the motorcycle crashed claimed that the injuries were in part caused by the lack of passenger crash bars, which were located only on the front of the motorcycle to protect the driver. The Indiana Supreme Court held that plaintiff's negligence action was barred by the open and obvious danger rule:

> Miller chose to ride the back seat of a motorcycle the front seat of which was equipped with the very crash bars she now alleges should have been on the back seat as well. This difference in the protection against danger was sufficiently apparent to justify the trial court's entry of summary judgment on open and obvious grounds. *Id.* at 1143.

Likewise, the alleged defects in the Radocy crane/truck and the Miller generator were of such a nature that they were open and obvious to the ordinary user and consumer of the products, such as Anderson and West, who were well-versed in the basic principles of electricity. A plaintiff's misperception of the degree of injury resulting from open and obvious defects will not preclude a finding that the defects are open and obvious.

The plaintiff cites *Kroger Co. Sav–On Store v. Presnell*, 515 N.E.2d 538, 543 (Ind. App.1987), and *Corbin v. Coleco Industries, Inc.*, 748 F.2d 411, 417–18 (7th Cir.1984), for the following proposition:

> Whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a *safe way* to use it, any danger there may be in using the product in the way generally believed

to be safe is not open and obvious. *Id.* (emphasis supplied).

Anderson then concludes that "[w]hat is not open and obvious is the extent that this *combination* would obviously allow electrocution to Anderson ..." Plaintiff's Brief in Opposition, p. 7.

In *Corbin,* the plaintiff dove into a pool filled with four feet of water and was severely injured as a result. *Corbin,* 748 F.2d at 412. The Seventh Circuit held that Corbin had put on evidence to preclude summary judgment because even though people are generally aware of the danger of diving into shallow water, they may believe that there is a safe way to do it, namely, by executing a flat, shallow dive. *Id.* at 417. The court found that if people do hold such a belief, then it cannot be said as a matter of law that the risk of spinal injury from diving into shallow water is open and obvious. *Id.*

The present case can be distinguished from *Corbin* because Anderson was not using the product in a "safe way." He knew that the very way in which he used the product could, and did, result in an electrical shock,[1] the very same danger that ultimately resulted in his death. There is also evidence, as indicated by Detraz's and West's testimony, that the ordinary user would believe that using the product in the way in which Anderson did could result in electrical shock. Merely because Anderson may have misjudged the strength of the voltage does not mean that he was using the product in a safe way.[2] The very way in which he was using the product posed a danger of electrical shock known to the ordinary user.

In *McDonald,* 870 F.2d at 389, the Seventh Circuit affirmed a denial of summary judgment, holding that the jury could reasonably find that the plaintiff's co-workers believed that the action which caused the plaintiff's injury could safely be performed. *Id.* at 394 (quoting *Corbin,* 748 F.2d at 417–18). Thus, a material issue of fact existed as to whether plaintiff used the product in a safe way, and any danger in using the product in the way generally believed to safe would not have been open and obvious. *Id.*

Again, as with *Corbin,* the facts in *McDonald* can be distinguished from those in the case at bar. The plaintiff in *McDonald* did not argue that she knew of the alleged defect, anticipated that her hand would get caught in the machine, and yet did not contemplate that she would be so severely injured. Contrarily, she argued that she thought she was in a safe position where she would not come into any contact with the conveyor belt, which did ultimately result in her hand being pulled into a blade. *McDonald,* 870 F.2d at 392.

Unlike the plaintiff in McDonald, Anderson is not claiming that he was using the crane/truck and generator in way in which he could not anticipate an electrical shock. He is contending that while he did foresee the electrical shock, he did not anticipate the severity of the injury. This is not a basis to argue that the open and obvious danger rule should not be applied under *Corbin* and its progeny. Anderson is making an entirely different argument from the plaintiffs in those cases where the Seventh Circuit has affirmed the denial of summary judgment because "any danger there may be in using the product in the way generally believed to be safe is not open and obvious." *Corbin,* 748 at 417–18; *McDonald,* 870 F.2d at 394. Here the alleged defects are the metal basket, metal crane arm, and lack of a GFI. As previously stated, a plaintiff's misperception of the degree of injury resulting from open and obvious defects will not preclude a finding that the defects are open and obvious.

Finally, Indiana law does not support the proposition that the Comparative Fault Act, I.C. 34–4–33, precludes the open and obvious danger rule. In *Moore,* 555 N.E.2d 1305, the

---

1. Immediately prior to the fatal electrocution, Anderson received a weaker shock when he removed the clips from the sign.

2. Plaintiff's argument is the same as if Corbin had argued that he was aware of the depth of the water of the pool, and he knew that he would hit the bottom and possibly be injured, but he did not expect that he would end up as a quadriplegic. This, however, is not at all what Corbin argued. He alleged that he was actually using the product in a safe way, executing a shallow dive whereby he would not anticipate hitting the bottom and being injured.

Indiana Supreme Court discussed both the incurred risk defense and the open and obvious danger rule. With respect to the incurred risk defense, the Court held that the defense "is specifically subject to the Comparative Fault Act. (*See* I.C. 34–4–33–2(a).)" *Id.* at 1308. When discussing the open and obvious danger rule, the Court stated that *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437 (Ind.1990), did not abrogate the rule, but rather held it inapplicable to strict product liability actions under the Indiana Products Liability Act. The Court went on to note that "*the [open and obvious danger] rule is still applicable in product negligence liability cases.*" *Moore*, 555 N.E.2d at 1309 n. 5 (emphasis added). *See also Miller, supra.*

When discussing the open and obvious danger rule, the Court in *Moore* did not mention the Comparative Fault Act. Given the preceding discussion of the applicability of the Act to the incurred risk defense, it seems that if the Court had interpreted the Act as also applying (or certainly if precluding) the open and obvious danger rule, it would have so stated. As Radocy notes, the incurred risk defense and the open and obvious danger rule are two separate inquiries.

In this case, the alleged defects—the metal basket, metal crane arm, and lack of a GFI—were open and obvious. Therefore, summary judgment in favor of Radocy and Miller on the negligence claims is appropriate.

II. *Anderson's Strict Liability Claims Are Barred Because the Crane/Truck And Generator Were Not In a Defective Condition*

Radocy claims that the crane/truck was not in a defective condition because it was in a condition contemplated by reasonable persons among those considered expected users or consumers of the crane/truck. Radocy asserts that ordinary users, such as West and Anderson, knew that the metal bucket and uninsulated boom arm would not provide them with any protection from electrical shock. In addition, the ordinary users, such as West, also knew that there was no GFI contained in the generator.

The plaintiff responds by claiming that Anderson, as an ordinary user, did not contemplate receiving a fatal electrical shock, but merely thought that he would receive a "tingle" due to the condition of the crane/truck and generator. Anderson contends that an expected user is not required to contemplate all dangers. Further, Anderson states that the product was unreasonably dangerous because it was not safe given the alternatives in design and manufacture.

Defendant Radocy replies that because West and Anderson, as ordinary users, knew that the crane/truck had a metal basket and metal crane arm which would not protect them from an electrical charge, the crane/truck was not defective because it was in a condition which was contemplated by the ordinary user. Radocy also claims that the metal bucket and boom arm were not designed or intended to provide insulation in order to avoid an electrical shock; accordingly, the crane/truck was not defective on that basis. Further, Radocy contends that a party cannot be liable for failing to equip its product with an optional device that the plaintiff's employer knowingly rejected, *Scallan v. Duriron Co., Inc.*, 11 F.3d 1249, 1254 (5th Cir.1994), and because Burkhart had the option to purchase a fiberglass from Radocy and did not do so, Radocy cannot be held liable. Finally, Radocy states that an ordinary consumer was aware that the metal bucket and crane arm would provide no protection from any sort of electrical current, whether a minor shock or a charge sufficient to cause a fatal electrocution; thus, the alleged defects were not dangerous to an extent beyond that contemplated by the ordinary user.

Likewise, defendant Miller replies that the fact that Anderson did not foresee the particular factual scenario which eventually led to his electrocution is irrelevant. Miller also states that a product is not defective for failing to do that which it was not designed to do, *Cox v. American Aggregates Corp.*, 580 N.E.2d 679, 685 (Ind.App.1991), and that its generator was not designed to provide GFI protection. Therefore, Miller concludes, the generator cannot be considered defective and

unreasonably dangerous for failing to provide GFI protection.

To maintain a product strict liability action in Indiana, the plaintiff must prove the product was in a defective condition when the injury occurred.

A product is in a defective condition ... if, at the time it is conveyed by the seller to another party, it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption. IC 33–1–1.5–2.5(a).

A situation is unreasonably dangerous when the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers. IC 33–1–1.5–2.

 A product is not unreasonably dangerous if it injures in a way which, by objective measure, is known to the community of persons consuming the product. *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1053 (Ind.App.1990). Plaintiff's admissions are not determinative, but are relevant to what the average consumer knew and whether the products were unreasonably dangerous. *Id.* at 1054. As the plaintiff concedes, Anderson and West knew that the crane/truck had a metal basket and metal crane arm which would not protect them from an electrical shock. Plaintiff's Brief in Opposition, p. 8. In addition, West, as an ordinary user, knew that there was no GFI on the generator. Also, Orville Detraz testified that someone with an electrical background would know that a metal bucket presented more of a risk of electrocution than a fiberglass bucket. This evidence demonstrates that the crane/truck and generator were in a condition contemplated by the ordinary user.

Anderson and West did not believe that they were protected by the products, only to surprisingly suffer an electrical shock. To the contrary, they believed that they could indeed be, and in fact were, subjected to an electrical shock. The plaintiff's allegation is that Anderson misjudged the strength of the electrical shock and did not contemplate that the shock would be great enough to result in fatal electrocution. However, because Anderson was injured in a *way* which was contemplated by ordinary users (i.e. electrical shock), the products are not unreasonably dangerous.

Additionally, a party cannot be liable for failing to equip its products with an optional device that the employer of the plaintiff knowingly rejected. *Scallan,* 11 F.3d at 1254. Anderson's employer, Burkhart Advertising, had the option to purchase a fiberglass bucket from Radocy at the time they purchased the crane/truck and chose not to do so. Deposition of Thomas Bradley, pp. 33, 34. Thus, Radocy cannot be liable for not equipping the crane/truck with a fiberglass bucket when Burkhart, the purchaser, did not opt to do so.

 Moreover, a product is not defective for failing to do that which it was not designed to do. *Cox,* 580 N.E.2d at 685. In *Cox,* the Indiana Court of Appeals held that because the product at issue was not designed or intended to prevent the type of injury suffered by the plaintiff, it was not defective within the meaning of the products liability act. *Id.* Similarly, in the present case, the metal basket, metal arm, and generator were not intended to prevent electrical shock or fatal electrocution, and therefore, the products are not defective.

 The Indiana open and obvious danger·rule does not apply to strict liability claims under the Indiana Product Liability Act. *Miller,* 551 N.E.2d at 1143; *Koske,* 551 N.E.2d at 437. The Act did not explicitly incorporate the open and obvious concept, but the relative obviousness of a defect is still pertinent in deciding whether a product is defective and unreasonably dangerous. *Id.* As discussed in the previous section, the alleged defects in the products were open and obvious, a factor that further supports the determination that the products were not defective and unreasonably dangerous.

■ Finally, a plaintiff cannot claim that the product was unreasonably dangerous because he did not have knowledge of his specific injury. *Rogers,* 557 N.E.2d at 1054; *Roysdon v. R.J. Reynolds Tobacco Company,* 849 F.2d 230, 232, 236 (6th Cir.1988). Under this rule, even if Anderson was not aware of the possibility of fatal electrocution, it does not necessarily follow that the product was unreasonably dangerous. Anderson and West were aware of the source of the injury and the way in which the injury would occur: by electrical shock. Thus, the products were not in a defective condition, unreasonably dangerous.

As a matter of law, the metal basket, metal crane arm, and the absence of a GFI do not render the crane/truck and generator in a defective condition, unreasonably dangerous. Accordingly, summary judgment in favor of Radocy and Miller on the strict liability claims is appropriate.

### III. *There Is a Genuine Issue of Material Fact As to the Issue of Proximate Cause*

■ The defendants, Radocy and Miller, raised the issue of proximate cause in their reply briefs. The gist of Radocy's argument is as follows: the plaintiff's experts were mistaken in concluding that Anderson was electrocuted when he came in contact with the metal sign frame. Instead, Radocy contends that Anderson touched an exposed 120 VAC wire inside the sign while his back made contact with the frame of the sign, and he became part of their electrical circuit (citing Affidavit of Richard W. Kragh, Deposition of L. Silva). Radocy's experts also concluded that a GFI would not have prevented the electrocution, and one expert stated that Anderson could not have been electrocuted through a circuit involving the metal bucket and boom arm. Thus, Radocy claims that it is entitled to summary judgment because there was no causal connection between the alleged defects and Anderson's death, even if the Radocy crane/truck was negligently designed and was in a defective condition.

Likewise, Miller's Reply Brief also claims that the absence of a GFI cannot be the proximate cause of Anderson's death. Specifically, Miller claims that because the Miller generator was a two-wired isolated system (and not a three wire grounded system), the current could not have leaked to the ground, the two wires remained equally energized, and a GFI could not have tripped and prevented such an accident. Miller contends that the plaintiff's experts assumed without verifying that the Miller generator was a three wire grounded system, and the plaintiff did not present any evidence that a GFI would prevent this accident in a two-wired isolated system such as Miller's. Thus, Miller concludes that there is no genuine issue of material fact and it is entitled to summary judgment on the issue of causation.

In response, with the permission of the court, the plaintiff filed a Sur-reply Brief and attached and incorporated by reference the Supplemental Affidavit of Scott West. The plaintiff states that the defendants' theory is rebutted by the affidavits of both West and plaintiff's expert Terry Walker, who indicated that the GFI does work on a two-wire system. Also, the plaintiff states that West testified that a subsequently installed GFI worked on the same generator circuit on the crane/truck. Thus, the plaintiff claims that the defendants' motions for summary judgment should be denied.

■ Proximate causation is generally a question of fact and not amenable to summary judgment. *Schneider v. Wilson,* 521 N.E.2d 1341 (Ind.App.1988) *Department of Commerce v. Glick,* 175 Ind.App. 449, 372 N.E.2d 479 (1978); *New York Central Railroad Co. v. Cavinder,* 141 Ind.App. 42, 211 N.E.2d 502 (1965). *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966), established that the question of proximate cause is ordinarily one for the trier of fact and not for the court to resolve as a matter of law. In the present case, where a factual dispute appears to be present on the matter of proximate cause, summary judgment is not appropriate.

### Conclusion

For the foregoing reasons, defendant Radocy's June 23, 1994, Motion for Summary Judgment and defendant Miller's July 1,

1994, Motion for Summary Judgment are granted.