## A95A1400. ALEXANDER v. GENERAL MOTORS CORPORATION.
### (466 SE2d 607)

ANDREWS, Judge.

The trial court granted partial summary judgment in favor of General Motors dismissing the portion of Alexander's products liability action based on a theory of strict liability, and Alexander appeals. The action arose out of an automobile accident in which Alexander claims his injuries were caused by a defectively designed or manufactured driver's seat in his General Motors car. Alexander, who was a Georgia resident, purchased the car in Georgia but was driving the car in Virginia, while stationed there with the United States Army, when the accident occurred. In granting partial summary judgment to General Motors, the trial court accepted General Motors' contentions that: (1) the strict liability cause of action was a tort claim; (2) since the accident and injuries at issue occurred in Virginia, the Georgia rule of lex loci delicti required the application of Virginia substantive law to the strict liability tort claim and (3) since Virginia law did not recognize recovery on the basis of strict liability, Alexander's strict liability tort claim must be dismissed.

The trial court correctly concluded that Alexander's strict liability claim pursuant to OCGA § 51-1-11 (b) (1) sounded in tort (*Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559, 560 (272 SE2d 251) (1980)), and that the Georgia rule of lex loci delicti governs the decision as to whether Virginia or Georgia substantive law applies to the strict liability claim. *Lloyd v. Prudential Securities*, 211 Ga. App. 247, 248 (438 SE2d 703) (1993). Under the rule of lex loci delicti, tort cases are governed by the substantive law of the place where the tort or wrong occurred (id. at 248), and in torts of a transitory nature the place of the wrong is the place where the last event occurred necessary to make an actor liable for the alleged tort. See *Wardell v. Richmond Screw Anchor Co.*, 133 Ga. App. 378, 380 (210 SE2d 854) (1974); *Risdon Enterprises v. Colemill Enterprises*, 172 Ga. App. 902, 903-904 (324 SE2d 738) (1984). Here, the last event necessary to

make General Motors liable on the products liability claim was the failure of the allegedly defective driver's seat resulting in Alexander's ejection from the car during the accident which occurred in Virginia. Accordingly, under the Georgia rule of lex loci delicti, Virginia substantive law applies.

However, Georgia recognizes a public policy exception to the rule of lex loci delicti. "Even if an application [of the rule of lex loci delicti] renders the law of another state applicable, the forum, within constitutional limits, is not required to give the law of another state extra-territorial effect. That is only done as a matter of courtesy or comity, which will not be enforced if the law of the other state contravenes the public policy of the forum. See OCGA § 1-3-9; *Commercial Credit Plan v. Parker*, 152 Ga. App. 409 (263 SE2d 220) (1979)." *Federal Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763, 765-766 (417 SE2d 671) (1992); see also *Karimi v. Crowley*, 172 Ga. App. 761, 762 (324 SE2d 583) (1984); *Roadway Express v. Warren*, 163 Ga. App. 759, 761 (295 SE2d 743) (1982). Accordingly, the issue is whether the public policy exception applies in this case.

Under the public policy exception to the rule of lex loci delicti, Georgia will not apply the substantive law of the place where the tort was committed if application of the foreign law "contravenes our established public policy, or the recognized standards of civilization and good morals; and this exception on account of the contravention of public policy of the State is sometimes invoked where the foreign statute is designed to redress an injury, but prescribes a form of redress which is radically dissimilar to anything existing in our own system of jurisprudence." *Southern R. Co. v. Decker*, 5 Ga. App. 21, 25 (62 SE 678) (1908). The substantive law of the place where the tort was committed and where the action arose will be applied by Georgia courts even where Georgia law recognizes a cause of action not available in the foreign jurisdiction, "provided the enforcement of the lex delicti would not seriously contravene the established policy of the forum." Id. at 29. The burden is on the party seeking to establish the public policy exception. Id.

Here, even though Virginia products liability law differs from Georgia law, there is no radical dissimilarity by which application of Virginia law would seriously contravene the public policy of Georgia. As set forth in the complaint and in his appellate brief, Alexander claims that either a manufacturing or a design defect in the driver's seat of the car caused his injuries and that the manufacturer, General Motors, is liable on a theory of strict liability for breach of an implied warranty of merchantability. See *Wood v. Hub Motor Co.*, 110 Ga. App. 101, 105 (137 SE2d 674) (1964). Alexander also sought recovery on a negligence theory.

As adopted in Georgia pursuant to OCGA § 51-1-11 (b), "the doc-

trine of strict liability puts a burden on the manufacturer who markets a new product to take responsibility for injury to members of the consuming public for whose use and/or consumption the product is made." *Robert F. Bullock, Inc. v. Thorpe,* 256 Ga. 744, 745 (353 SE2d 340) (1987). Although Virginia has not adopted a strict liability theory in products liability cases (see *Sensenbrenner v. Rust, Orling & Neale, Architects,* 374 SE2d 55, 57, n. 4 (Va. 1988)), "[u]nder Virginia law, recoveries for personal injuries caused by defective products can be made as breach of an implied warranty of merchantability or under a tort theory of negligent design. . . . The warranty cause of action has two elements: (1) the goods were 'unreasonably dangerous' either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) the unreasonably dangerous condition existed when the goods left the manufacturer's control. [Cits.] A product is 'unreasonably dangerous' if defective (1) in assembly or manufacture, (2) if imprudently designed, or (3) if not accompanied by adequate warnings about its hazardous properties. [Cits.]" *Abbot v. American Cyanamid Co.,* 844 F2d 1108, 1114 (4th Cir. 1988) (applying Virginia law).

Despite the absence of a separate strict liability cause of action, "the warranty liability under Virginia law for personal injuries caused by defective products is the functional equivalent of strict liability under the Restatement[, Second, Torts, § 402A] formulation." American Law of Products Liability 3d, § 16:22. "[I]t is well established that warranty liability under Virginia law for personal injuries caused by defective products is the functional equivalent of strict tort [liability] under the Restatement formulation. [Cits.]" *Bly v. Otis Elevator Co.,* 713 F2d 1040, 1045, n. 6 (4th Cir. 1983); see also *Abbot,* supra at 1114 (Virginia warranty cause of action for personal injuries caused by defective products is similar to strict liability in tort under the Restatement version). Although Georgia's statutory version of strict liability differs from the Restatement § 402A version to which Virginia's warranty liability has been compared, both share a common public policy designed to shift the burden of loss caused by defective products from the victim to the manufacturer, and both do so by focusing not on whether the manufacturer negligently failed to use due care but on whether the marketed product was defective. See Maleski, Ga. Products Liability (2d ed.), §§ 2-2, 2-3; *Banks v. ICI Americas,* 264 Ga. 732 (450 SE2d 671) (1994) (focusing on a risk utility analysis to determine whether a product was defectively designed).

Virginia products liability law is not radically dissimilar to Georgia law but rather pursues a similar public policy by somewhat different methods. Since Virginia law does not contravene Georgia public policy, the public policy exception is not applicable, and Virginia substantive law applies in this case under the rule of lex loci delicti. Ac-

cordingly, the trial court correctly granted partial summary judgment in favor of General Motors to the extent Alexander sought to recover under Georgia's version of strict liability.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Johnson and Smith, JJ., concur. McMurray, P. J., Pope, P. J., Blackburn and Ruffin, JJ., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as I find no compelling reason for Virginia law to displace Georgia's policy of holding manufacturers strictly liable in tort for injuries proximately caused by defective products placed on the market in this State. In this vein, I believe the majority dodges the controlling issue, i.e., weighing Georgia's interest in applying OCGA § 51-1-11 (b) against application of the lex loci delictus, and instead applies what I view to be a flawed premise and conclusion that Phillip Alexander, Jr. is no worse off via application of Virginia law because "there is no radical dissimilarity by which application of Virginia law would seriously contravene the public policy of Georgia." Indeed, the majority's logic inaccurately suggests that the trial court gave Alexander leave to amend his complaint for recovery based on a theory of implied warranty. In fact, the trial court excluded Alexander's breach of warranty claims, along with his strict liability claim under OCGA § 51-1-11 (b), and specifically directed Alexander to "file an amended complaint asserting only negligence claims against GM under Virginia law."

On October 9, 1989, Phillip Alexander purchased a Chevrolet Camaro automobile for his son, Phillip Alexander, Jr. ("Alexander"), from an authorized General Motors Corporation ("GM") dealer in Chamblee, Georgia. Alexander took immediate possession of his new car and drove it to Fort Gordon, Georgia, where he was then serving in the United States Army. In March 1990, Alexander took the car to his new duty station at Fort Belvoir, Virginia, and a year later, he lost control of the Camaro while traveling with a friend on Route 1 in Fairfax County, Virginia.[1] The car skidded across the highway, pivoted and then rear-ended against a tree. The impact did not seriously injure Alexander's passenger, but it was enough to collapse the car's driver's seat, force Alexander under his safety belt and eject him through the car's rear window. The resulting blow caused severe damage to Alexander's spinal cord.

Suffering from quadriplegia, Alexander returned to Georgia where the Camaro was purchased, moved in with his parents and initiated an action against GM, alleging that a defective seat mechanism

---

[1] Although Alexander was stationed at Fort Belvoir, he "maintained [his] legal residence [in] Decatur, Georgia . . . and filed Georgia state income tax returns."

in the car was the proximate cause of his injuries. GM denied liability and the parties filed opposing motions for summary judgment, seeking a determination of whether Georgia law or Virginia law governs the substantive rights of the parties. The trial court granted partial summary judgment in favor of GM, finding "that Virginia law applies to the claims against GM, that Virginia law does not recognize strict liability actions in product liability cases, and therefore [dismissing] all of [Alexander's] strict liability claims[. The trial court then gave Alexander time to] file an amended complaint asserting only negligence claims against GM under Virginia law."

Alexander now contends the trial court erred in precluding recovery based on strict liability, arguing that OCGA § 51-1-11 (b) (1) imposes strict liability via an implied warranty of merchantability and reasons that, "under Georgia's traditional approach in conflict of laws, the trial court should [have looked] to the place of warranty and not the place of the injury [to determine the substantive rights of the parties]." In opposition, GM points out that OCGA § 51-1-11 (b) (1) specifies liability in tort rather than implied warranty, contending the trial court correctly applied Georgia's choice of law rule under which tort actions are adjudicated according to the law of the place of injury. See *Risdon Enterprises v. Colemill Enterprises*, 172 Ga. App. 902, 903 (1) (324 SE2d 738).

I believe that Alexander's confusion over whether OCGA § 51-1-11 (b) (1) sounds in tort or implied warranty stems from confusing statutory language. While subsection (b) (1) provides that a manufacturer "shall be liable in tort" for injuries caused by defective personal property sold as new property in Georgia, it also appears to impose an implied warranty standard by providing for possible liability if the property "when sold by the manufacturer was not merchantable and reasonably suited to the use intended. . . ." OCGA § 51-1-11 (b) (1). See Maleski, Ga. Products Liability (2d ed.), pp. 36-37, § 2-2. Any confusion prompted by this statutory language can be put to rest, however, since the Georgia Supreme Court has said "that the theoretical basis of the claim [under OCGA § 51-1-11 (b) (1)] is in tort. *Center Chemical Co. v. Parzini*, 234 Ga. 868 (218 SE2d 580) (1975)[, disapproved on other grounds in *Banks v. ICI Americas*, 264 Ga. 732, 733 (1), 734 (450 SE2d 671)]." *Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559, 560 (272 SE2d 251). To this extent, I agree with the majority that Georgia's manufacturers' strict liability statute sounds in tort for purposes of resolving the choice of law issue now before this Court.

Although "Georgia generally adheres to the traditional choice of law system, under which tort actions are adjudicated according to the law of the place where the wrong occurred[,] *Sargent Industries v. Delta Air Lines*, 251 Ga. 91 (303 SE2d 108) (1983); *Wardell v. Rich-*

*mond Screw Anchor Co.*, 133 Ga. App. 378 (210 SE2d 854) (1974)[,] ' "(t)he laws of other states have no force in Georgia except on principles of comity and so long as their enforcement 'is not contrary to the policy of this State.' (Cit.)" (Cits.)' *Roadway Express v. Warren*, 163 Ga. App. 759, 761 (295 SE2d 743) (1982). ' "Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute (or law) of another state by the full faith and credit clause (or for any other reason) assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum. It follows that not every statute (or law) of another state will override a conflicting statute of the forum . . .; that the statute of a state may sometimes override the conflicting statute (or law) of another, both at home and abroad. . . ." ' *Security Ins. Group v. Plank*, 133 Ga. App. 815, 817 (212 SE2d 471) (1975). Thus, even though [Alexander's] injury [in the case sub judice] was incurred in [Virginia], the courts of this State will apply [Virginia] law as the *lex loci* only to the extent that such application would not offend the public policy of Georgia." *Karimi v. Crowley*, 172 Ga. App. 761, 762 (324 SE2d 583). See American Law of Products Liability 3rd, § 46:18.

The Georgia General Assembly, through the enactment of OCGA § 51-1-11 (b) (1), has demonstrated Georgia's policy of protecting Georgia consumers against the burden of bearing the costs of injuries caused by defective products sold by manufacturers in this State. It has done this by adopting a "doctrine of strict liability [that] puts a burden on the manufacturer who markets a new product to take responsibility for injury to members of the consuming public for whose use and/or consumption the product is made." *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745 (353 SE2d 340).[2] But does this policy overcome our traditional rule of lex loci delictus? The majority dodges this pivotal question by holding that Alexander is no worse off

---

[2] Practically speaking, allowing Alexander to proceed in strict liability would relieve him of the burden of proving negligence. *Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559, 560, supra. Some have said, however, that the advantages of strict liability over negligence are only a matter of semantics with regard to a plaintiff's burden of proof in design defect cases. *Banks v. ICI Americas*, 264 Ga. 732, 733 (1), 735, n. 3, supra. While this observation remains well taken, the advantages of proceeding in strict liability in such cases is more discernible now that the Supreme Court has adopted a risk-utility analysis for measuring the reasonableness of a manufacturer's actions in designing and selling a particular product. Id. For example, as an offending product approaches the state of the art and the risk of injury from its use becomes more remote, unlikely are the chances of recovery based in negligence. But under a risk-utility analysis, if the same product is of small utility compared to the magnitude of risk it creates, the more likely it is for the manufacturer to be held strictly liable for injuries proximately caused by the product. See Maleski, Ga. Products Liability (2d ed.), pp. 112, 115, § 6-2.

via application of the lex loci delectus because "there is no radical dissimilarity by which application of Virginia law would seriously contravene the public policy of Georgia." I believe this logic is flawed in two fundamental respects.

First, contrary to the majority's main premise, the trial court did not give Alexander the option to pursue claims based on theories of implied warranty. In fact, Alexander was not allowed to pursue any implied warranty claims, even though he asserted such breach of warranty claims (under Georgia law) in separate counts of his complaint. As quoted from the trial court's order, Alexander was directed to "file an amended complaint asserting only negligence claims against GM under Virginia law." Second, the majority exceeds the bounds of this Court's authority by expounding Alexander's rights under Virginia law, particularly his right to recover based on a theory of breach of implied warranty of merchantability. "Where the rights of parties depend upon [the law of another State], and no statute of that state is pleaded or proved, [as is the circumstance in the case sub judice,] this court will presume that the common law is to be applied there. *White v. White*, 41 Ga. App. 394 (1) (153 SE 203)." *Risdon Enterprises v. Colemill Enterprises*, 172 Ga. App. 902, 904 (2), supra. See OCGA § 24-7-24 (a). See also American Law of Products Liability 3rd, § 46:37.

More on track in weighing Georgia's interest in applying the law of the forum as opposed to the lex loci delictus, GM infers that Georgia's policy of allocating greater risk to manufacturers in products liability cases is outweighed by Virginia's "interest in the outcome of this litigation . . ." because, "regardless of the state of his legal residence, [Alexander] was living in and traveling on the streets and highways of Virginia [at the time of the collision]." Although I do not agree with this argument, it is on point and worthy of response.

First, there appears to be little (if any) connection between Virginia's interest in regulating activities on its highways and Alexander's claims against GM. Alexander is not suing a Virginia resident and he is not claiming that Virginia's highways are unsafe or were otherwise a proximate cause of his injuries. He is suing GM, a manufacturer in the State of Georgia, for placing a defective product on the market in his home State, allegations which bear solely upon the interests of those residing or doing business in Georgia. Under such circumstances, I see no reason why a citizen of this state (Alexander) should be deprived of the benefit of Georgia's policy of placing the "burden on the manufacturer who markets a new product to take responsibility for injury to members of the consuming public for whose use and/or consumption the product is made." *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745, supra. Certainly, "[t]here can be no more basic a public policy decision than one which allocates risk and social

cost." *Trahan v. E. R. Squibb & Sons, Inc.*, 567 FSupp. 505, 510 (1983). Second, I find no compelling reason to diminish the impact of Georgia's strict liability rule simply because Alexander drove his car out of the State while on temporary military assignment. It is unlikely that Alexander had ultimate control over his military assignment. The Camaro's seat could have just as easily failed while he was stationed at Fort Gordon, Georgia. Indeed, as was the case in *Baroldy v. Ortho Pharmaceutical Corp.*, 760 P2d 574, 578-579 (1984), such circumstances of chance should not govern the rights and duties of the parties in products liability cases. Otherwise, the protection afforded Georgia consumers under OCGA § 51-1-11 (b) (1) would flicker off upon travel (no matter how temporal) outside the geographical boundaries of Georgia only to flare up upon reentry into the State.

"While [I] have much respect for the decisions emanating from our great sister State of [Virginia], such decisions can not change or modify the statutory law of this State." *Henson v. Airways Svc.*, 220 Ga. 44, 49 (2), 52 (136 SE2d 747). The law of Georgia is that manufacturers will be strictly liable in tort for injuries proximately caused by defective products placed on the market in this State. This policy is sound and, under principles of comity, I believe must be enforced as an exception to the general choice of law rule under which tort actions are adjudicated according to the law of the place where the wrong occurred.

I am authorized to state that Presiding Judge Pope, Judge Blackburn and Judge Ruffin join in this dissent.

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 —

*Kenneth F. Dunham, Dovre C. Jensen, Jr., Margaret N. Paton, L. Lynn Hogue*, for appellant.

*Lord, Bissell & Brook, Terry R. Howell, Corliss L. Worford*, for appellee.