Sean COLE, Appellant–Plaintiff,

v.

The LANTIS CORPORATION, Appellee–Defendant.

No. '49A02–9809–CV–766.

Court of Appeals of Indiana.

June 28, 1999.

Lee C. Christie, Angela J. Herod, Cline Farrell Christie & Lee, Indianapolis, Indiana, Attorneys for Appellant.

Steven E. Springer, Eric D. Johnson, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Plaintiff Sean Cole ("Cole") appeals the summary judgment entered against him in his products liability/negligence lawsuit against Appellee–Defendant Lantis Corporation ("Lantis"), the manufacturer of a "K–Loader" from which Cole fell. We reverse.

### Issues[1]

Cole raises three issues which we restate and consolidate into two as follows:

---

1. On appeal, as its first argument submitted in defense of summary judgment, Lantis argues: The primary flaw in Plaintiff's position ... regarding whether the K–Loader is defective is that the alleged lack of work space on the K–Loader's platform is not caused by the design of the K–Loader ..., but instead, is caused by the size of the containers that [Cole] placed upon the K–Loader. The fact that [Cole] placed containers on the K–Loader that left [him] with insufficient work space does not render the K–Loader defective.

I. Whether a genuine issue of material fact exists regarding whether Lantis' K–Loader was defective and unreasonably dangerous; or stated alternatively: whether Cole's claim is barred by application of the open and obvious rule.

II. Whether Cole's claim is barred by the affirmative defense of incurred risk.

## Facts

The facts in the light most favorable to the nonmovant Cole reveal that his employment duties included loading large cargo containers onto aircrafts. (R. 217–18). In order to access the cargo bays of aircrafts, Cole was required to work upon a "K–Loader," an elevated platform which stood several feet off the ground. (R. 236). When positioned for loading, there was a gap of approximately eighteen inches between the edge of the K–Loader's platform and the edge of an aircraft's cargo bay. (R. 206–07). A gap of some width was necessary because K–Loaders cannot come into contact with an aircraft's fuselage because of the possibility of damage. (R. 201, 306). Cole slipped through the gap between a K–Loader and an aircraft, fell approximately fifteen feet, landed on his head, and suffered serious personal injuries. (R. 236, 359–60). Lantis manufac-

tured the particular K–Loader from which Cole fell. (R. 9–10).

Cole presented the affidavit of an engineer recognized as an expert on the safety design of industrial machinery.[2] (R. 465–66). Cole's engineer opined that the Lantis K–Loader from which Cole fell was negligently designed and unreasonably dangerous due to several defects including 1) that the gap was too wide, 2) that the handrail was inadequate, 3) that there was insufficient work space on the platform, 4) that the instructions in the operating manual were inadequate, and 5) that there was no warning regarding the requirement that a bumper be near the aircraft to provide adequate protection against falling. (R. 421, 464–68).

When Cole had worked for a previous employer, he had used other Lantis K–Loaders which utilized wider platforms and different guard rails than the one from which Cole fell. (R. 237). Cole stated that the other K–Loaders had "rails and platforms to stand and/or grab along the left and the right side from front to back of the bridge." (R. 237). Cole stated further that the K–Loader from which he fell was not as safe as the other K–Loaders because "there wasn't much of a rail or a platform to stand onto." (R. 237).

(Appellee's brief at 16; citations omitted). Although Lantis raised the affirmative defense of misuse of product in its answer along with six other affirmative defenses, our review of Lantis' motion, brief, and materials submitted and designated in support of summary judgment leads us to the conclusion that this contention that the containers Cole had been loading were too large for the K–Loader has been raised for the first time on appeal.

Summary judgment may not be sustained where the moving party has not specifically designated materials establishing his prima facie showing of an entitlement to judgment. *Kissell v. Vanes*, 629 N.E.2d 878, 880 (Ind.Ct.App.1994) (neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court); *See also, Abbott v. Bates*, 670 N.E.2d 916, 925 (Ind.Ct.App.1996) (even where an affirmative defense has been raised in defendant's answer, the failure to address that defense in the materials designated in the summary proceedings constitutes waiver). Accordingly, we must conclude that summary judgment may not be sustained on the basis of this "size of container" contention. Incidentally, although it is axiomatic that we cannot consider evidence

outside the record, Cole counters that the K–Loader's Operation and Maintenance Manual specifically lists the size of the container in question as appropriate for loading with the K–Loader. (Appellant's reply brief at 1). Cole's failure to designate or include the Operation and Maintenance Manual is explained by the fact that Lantis did not raise this particular misuse defense in the trial court. *See Babinchak v. Town of Chesterton*, 598 N.E.2d 1099, 1101 (Ind.Ct. App.1992) (only when the party moving for summary judgment makes a prima facie showing of an entitlement to judgment on the basis of the specifically designated materials does the burden shift to the non-moving party to point to specifically designated facts which establish an issue of material fact). In any event, Lantis' injection of this contention for the first time on appeal is not well-taken.

**2.** Cole devotes a large portion of his Appellant's brief to an argument that his expert's opinion was properly admissible under Ind. Evidence Rule 702(b). However, on appeal, Lantis in effect concedes that the expert's opinion may be appropriately considered for the purposes of this appeal. (Appellee's brief at 11 n.1). Lantis' candor on this matter is appreciated.

Cole had observed the gap and had appreciated the danger posed thereby from his first day on the job with the employer in question. (R. 238–39). Cole expressed his concerns regarding the danger posed by the K–Loader to his supervisors, but no action was taken to alleviate the danger. (R. 238–39). Before the fall, Cole had worked on this type of K–Loader for more than a year without incident. (R. 238). With respect to the danger posed by the gap, Cole explained that "[t]here wasn't ... much we could do I guess ... I had to work." (R. 239).

Lantis obtained summary judgment. This appeal ensued.

### Discussion and Decision

Lantis points out that Cole was fully aware of the dangers posed by the gap between the K–Loader and the aircrafts being loaded. Thus, Lantis argues that the K–Loader was not unreasonably dangerous under the open and obvious rule. Similarly, Lantis argues that because Cole had actual knowledge of, understood, and appreciated the specific risk posed by the gap, his claim is barred by the affirmative defense of incurred risk. *See generally, FMC Corporation v. Brown,* 551 N.E.2d 444, 446 (Ind.1990) (evidence that a danger or defect of a product is readily observable is relevant and material to both the issues of 1) whether the product was defective and unreasonably dangerous, and 2) whether the plaintiff's claim is barred by the affirmative defense of incurred risk).

*Standard of Review—Summary Judgment in a Products Liability/Negligence Action*

■■■■ As stated in *Wolfe v. Stork RMS–Protecon, Inc.,* 683 N.E.2d 264 (Ind.Ct.App. 1997):

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the trial court erred.

When a defendant manufacturer in a negligence/products liability case moves for summary judgment, it has the burden to show the uncontroverted nonexistence of at least one of the elements essential to plaintiff's case. The reviewing court will affirm the grant of summary judgment on any legal basis supported by the designated evidentiary material.

*Id.* at 267 (quotations and citations omitted). Additionally, summary judgment is appropriately entered in favor of a defendant manufacturer on the affirmative defense of incurred risk where the evidence is without conflict and the sole inference to be drawn is that the plaintiff knew and appreciated the risk, but nevertheless accepted it voluntarily. *See Ferguson v. Modern Farm Systems, Inc.,* 555 N.E.2d 1379, 1381 (Ind.Ct.App. 1990), *trans. denied.*

### I. Defective and Unreasonably Dangerous—Open and Obvious Danger Rule

■■■■ Under the Indiana Product Liability Act, IND.CODE § 33–1–1.5–1 through –5,[3] the plaintiff must prove that the product was in a defective condition which rendered it unreasonably dangerous. *Welch v. Scripto–Tokai Corporation,* 651 N.E.2d 810, 814 (Ind. Ct.App.1995). "The requirement that the product be in a defective condition focuses on

---

3. In 1998, the Indiana Product Liability Act was repealed and recodified at IND.CODE § 34–20–1 through –9. P.L.1–1998 § 221. Additionally, the definitions of several terms used in the Act are now found in IND.CODE § 34–6. *Id.*

the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer." *Id.* " '[U]nreasonably dangerous' " has been defined as " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer ... with the ordinary knowledge common to the community as to its characteristics.' " *FMC Corporation v. Brown,* 526 N.E.2d 719, 728 (Ind. Ct.App.1988) (citing *Bemis Co., Inc. v. Rubush,* 427 N.E.2d 1058, 1061 (Ind.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61), *opinion adopted,* 551 N.E.2d 444.

 Technically, the open and obvious rule does not apply to strict liability claims under the Indiana Product Liability Act. *See FMC,* 551 N.E.2d at 446. Nevertheless, to be unreasonably dangerous, a defective condition must be hidden or concealed. *FMC,* 526 N.E.2d at 728. Thus, whether a danger is open and obvious *and* whether the danger is hidden are two sides of the same coin. *McDonald v. Sandvik Process Systems, Inc.,* 870 F.2d 389, 393 (7th Cir.1989) (citing *Bridgewater v. Economy Engineering Co.,* 486 N.E.2d 484, 488 (Ind.1985)). Accordingly:

[e]vidence of the open and obvious nature of the danger serves ... to negate a necessary element of the plaintiff's prima facie case that the defect was hidden.

*FMC,* 526 N.E.2d at 728–29; *McDonald,* 870 F.2d at 393.

 The question of whether a particular plaintiff's claim is barred under the open and obvious rule cannot always be resolved by the court as a matter of law. *Bridgewater,* 486 N.E.2d at 488; *Schooley v. Ingersoll Rand, Inc.,* 631 N.E.2d 932, 939 (Ind.Ct.App. 1994). When the facts or the reasonable inferences to be drawn therefrom are in conflict, the open and obvious nature of the danger is a question of fact for the jury. *FMC,* 526 N.E.2d at 724.

 Moreover, as stated in *Kroger Company Sav–On Store v. Presnell,* 515 N.E.2d 538, 544 (Ind.Ct.App.1987), *trans. denied:*

'[w]hether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious.'

(citing *Corbin v. Coleco Industries, Inc.,* 748 F.2d 411, 417 (7th Cir.1984)); *see also Schooley,* 631 N.E.2d at 939 (although the danger of moving a large steel plate without safety chains was obvious, whether the rule would apply to bar plaintiff's recovery was a question of fact for the jury where moving the plate was part of employee's job and the plate had been moved safely on many other occasions); *FMC,* 526 N.E.2d at 725 (even though the danger of electrocution posed by a power line was obvious to the operators of a crane, whether the open and obvious rule would apply to preclude recovery was a factual question for the jury where the operators often performed repairs near power lines and could have reasonably believed that it was safe to do so); *McDonald,* 870 F.2d at 394 (although the danger posed by a moving slicing blade was obvious, whether the open and obvious rule would apply to bar recovery was a question of fact where employees had developed a generally safe method of tightening the blade while the machine was running); *Cf., Anderson v. P.A. Radocy & Sons, Inc.,* 67 F.3d 619, 623–24 (7th Cir.1995) (summary judgment against plaintiff affirmed where, although he had attempted to work around the obvious danger of electrocution, he did not take the reasonable precautions known and available to him which would have reduced the risk—such as disengaging the power).

 In the present case, although the gap between the K–Loader and aircraft, and the danger posed by the gap, were obvious, Cole had safely moved containers over the gap for more than a year before the accident. Evidently, Cole had developed a generally safe method of moving containers over the gap: apparently, Cole had been able to step over it. Finally, there were no obvious or reasonable precautionary measures that Cole could have taken to reduce the risk of falling.

Accordingly, based on the above, we must conclude that the question of whether the K–Loader was unreasonably dangerous (or whether Cole's claim is barred by the open and obvious rule) is a question of fact which must be resolved by the jury. Accordingly, summary judgment may not be sustained on this basis.

## II. Incurred Risk

### A. Voluntariness

Incurred risk is a defense to both strict liability and negligence claims. *Schooley*, 631 N.E.2d at 940.[4] Incurred risk involves a mental state of venturousness on the part of the actor and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk. *Id.* For a claim to be barred by the affirmative defense of incurred risk as a matter of law in summary judgment proceedings, the evidence must be without conflict and the sole inference to be drawn is that the plaintiff had actual knowledge of the specific risk and understood and appreciated that risk. *Id.*

However, as stated in *Meadowlark Farms, Inc. v. Warken*, 176 Ind.App. 437, 376 N.E.2d 122, 133 (1978):

> " 'The incurring of the risk must really be voluntary. If the continued exposure to a known risk of injury ... is the result of influence, circumstances, or surroundings, which are a real inducement to continue, the doctrine does not apply, since the exposure is not in a true sense voluntary.' "

(citing *Ridgway v. Yenny*, 223 Ind. 16, 57 N.E.2d 581, 583 (1944)). We have recognized that the responsibilities and influences arising from involvement in the workplace can be determinative as to the voluntariness of an employee's actions. *Schooley*, 631 N.E.2d at 940. Therefore, the issue of whether an employee has incurred the risk of an activity *incidental to his or her employment* is a question of fact for the jury to decide. *Id.* For example, in *Schooley*, we held that the issue of whether an employee voluntarily in-

curred the risk of her injuries was a question of fact for the jury where she was trying to do the job she was ordered to do and thought that it could be done safely by standing off to the side of the large metal plate. *Id.; See also, Richardson v. Marrell's Inc.*, 539 N.E.2d 485 (Ind.Ct.App.1989) (whether employee voluntarily incurred the risk of slipping on ice while making a delivery on the job was an issue of fact for resolution by the jury), *trans. denied; Meadowlark Farms*, 376 N.E.2d at 127, 133–34 (whether sharecropper who had been directed to deliver corn to a particular facility had voluntarily incurred the risk posed by an unreasonably dangerous grain auger used at that facility was an issue of fact for resolution by the jury).

### B. Analysis

In the present case, Cole's job necessarily entailed moving containers across the gap from the K–Loader into aircraft. With respect to the known danger posed by the gap which he had been able to work around (or over) for more than a year, Cole plainly explained that "[t]here wasn't ... much we could do I guess ... I had to work." (R. 239).

Based on the above, whether Cole voluntarily incurred the risk of falling through the gap is a factual question which must be resolved by a jury. As there are genuine issues of material fact which remain for resolution, the entry of summary judgment was erroneous and we must reverse and remand for trial.

Judgment reversed.

STATON, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

## FRIEDLANDER, Judge, dissenting

I believe that the Lantis Corporation was entitled to summary judgment under the doctrine of incurred risk and therefore respect-

---

4. As codified under the Indiana Product Liability Act, it is a defense to a product liability claim that:
the user or consumer bringing the action knew of the defect and was aware of the danger and
nevertheless proceeded unreasonably to make use of the product and was injured by it.
IND.CODE § 33–1–1.5–4(b)(1).

fully dissent from the majority's reversal of summary judgment.

Ind.Code Ann. § 34–20–6–3 (West Supp. 1998) (formerly Ind.Code Ann. § 33–1–1.5–4 (repealed 1998)), codifies the statutory equivalent of the defense of incurred risk, as follows:

> It is a defense to an action under this article (or IC 33–1–1.5–before its repeal) that the user or consumer bringing the action:
>
> (1) knew of the defect;
>
> (2) was aware of the danger in the product; and
>
> (3) nevertheless proceeded to make use of the product and was injured.

The defense of incurred risk is applicable to negligence claims brought under the Products Liability Act, i.e., IC § 34–20–1–1 et seq. Schooley v. Ingersoll Rand, Inc., 631 N.E.2d 932 (Ind.Ct.App.1994). The defense applies when the evidence establishes that the plaintiff knew and appreciated the danger caused by the alleged negligence, but nevertheless accepted the danger voluntarily. Ferguson v. Modern Farm Systems, Inc., 555 N.E.2d 1379 (Ind.Ct.App.1990), trans. denied.

The majority concludes that Lantis is not entitled to summary judgment because there remains a question of fact regarding whether Cole's acceptance of the risk was voluntary. The majority cites in support of this view several cases involving employees who, like Cole in the instant case, were injured on the job. Two of those cases, Richardson v. Marrell's, Inc., 539 N.E.2d 485 (Ind.Ct.App.1989) and Meadowlark Farms, Inc. v. Warken, 176 Ind.App. 437, 376 N.E.2d 122 (1978), involved employees who were injured on the defendant's business premises. In those cases, this court concluded that the voluntariness of the acceptance of the risk was in question because the plaintiff arguably was under some sort of compulsion to accept the risk. As the Meadowlark Farms, Inc. court phrased it, there was a question "whether he had no real choice as a result of 'influence, circumstances, or surroundings which (were) a real inducement to continue.'" Id. at 134 (source of internal quotation not provided in original). The "influence" to which the court alluded in both cases came from the employer/defendant. In this context, there is no doubt that the "inducement" to which the court referred was continuance of the business relationship or employment. Here, on the other hand, Lantis did not have a business relationship with Cole and thus was unable to exert any influence with regard to the risk posed by using the K–Loader. As a result, Lantis could not offer an inducement to Cole to accept the risk, certainly not the inducement that in this context affects the voluntariness of accepting the risk, i.e., continued employment.

In summary, I would not extend the principles that were applied in Meadowlark Farms and Richardson, concerning the voluntariness of the acceptance of a known risk, beyond the context in which they were applied in those cases, i.e., when a plaintiff/employee sues his employer or a party with whom he has a business relationship for injuries suffered while on the defendant's premises. I believe that if the relationship between the employee and the defendant is not such that the defendant can exert influence over the plaintiff and offer inducements (in this case, pecuniary), then the rationale that gave rise to the rule is not present and the rule does not apply. This view is buttressed by Comment (b) to § 496 E of the Restatement (Second) of Torts, concerning the necessity of a voluntary assumption of risk. That comment states:

> The plaintiff's acceptance of the risk is to be regarded as voluntary even though he is acting under the compulsion of circumstances, not created by the tortious conduct of the defendant, which have left him no reasonable alternative. Where the defendant is under no independent duty to the plaintiff, and the plaintiff finds himself confronted by a choice of risks, or is driven by his own necessities to accept a danger, the situation is not to be charged against the defendant.

Simply put, Lantis neither exerted influence over, nor offered an inducement to, Cole such that the voluntariness of Cole's decision, with respect to this particular defendant, was called into question.

The third case cited by the majority, *Schooley v. Ingersoll Rand, Inc.*, 631 N.E.2d 932, is distinguishable for a different reason. As noted by the majority, the *Schooley* court stated that "the issue of whether an employee has incurred the risk of an activity incidental to his or her employment is a question of fact for the jury to decide." *Id.* at 940. However, the court went on to acknowledge, "We have also recognized that prior knowledge of specific dangers of a job and acceptance of these dangers warrants a finding of incurred risk as a matter of law." *Id.* The court concluded that the question of whether Schooley voluntarily incurred the risk of her injuries was to be determined by a jury because the evidence revealed that "she was not aware of the specific risk of using a product which was lacking a safety device. Furthermore, she was not aware of the risk that a 1500 pound plate would fall to the side in the manner in which it did." *Id.* In other words, the evidence revealed that the plaintiff in that case was not aware of the specific risk to which she subjected herself. The same cannot be said in Cole's case.

In *Ferguson v. Modern Farm Systems, Inc.*, 555 N.E.2d 1379, a worker was injured when he fell off of a ladder that was affixed to the side of a grain storage bin. He sued the owner of the bin on which the ladder was located, the company that manufactured the ladder, and the company that constructed the bin. His claim of negligence centered upon the fact that there was not a protective cage around the ladder. At the time of his fall, the worker was climbing the ladder using one hand, while holding conduit in the other. He testified that he had climbed the same ladder on a least twenty previous occasions, including five times earlier that day. He testified that he knew the ladder was uncaged, and he was aware of a risk of falling any time one climbs a ladder using only one hand. He also stated that he accepted the risk that he would fall off of a ladder as a part of his job. In affirming summary judgment in favor of the defendants, the court stated: "[O]ur record unmistakably shows [the worker] actually knew of the dangers he faced by climbing the ladder with one hand." *Id.* at 1382. In my view, the relevant facts in the case before us are strikingly similar to those in *Ferguson.*

Cole was injured when he fell through a gap between the handrails of the K–Loader and the airplane. Cole testified in a deposition that he noticed on his first day on the job with Evergreen's that the K–Loaders had a smaller platform and smaller rails than he was accustomed to. He also testified that he knew the handrails were not allowed to touch the airplane, thereby evincing knowledge that there was always a gap between the airplane and the K–Loader. He testified that it was apparent to him from the time that he commenced employment with Evergreen that this was a "dangerous condition." *Record* at 239. Specifically, he testified:

Q: You had been at Evergreen then for a full year anyway?

A: Correct.

Q: And then noticed this—

A: Correct.

Q: —business with the rails for a full year?

A: Correct.

\* \* \* \* \*

Q: Did you regard this as some sort of a dangerous condition?

A: Yes.

Q: And that was right from the first time you saw it?

A: Correct.

\* \* \* \* \*

Q: And the business that you are talking about, the positioning of the rails and so forth, this was something that was open and obvious that you could see readily?

A: Exactly, correct.

*Record* at 238–39.

I believe that the designated materials demonstrate that Cole was aware of the specific risks posed by the allegedly dangerous condition of which he complained, and that he voluntarily exposed himself to those risks without inducements or influence on the part of Lantis. *See Ferguson v. Modern Farm Systems, Inc.*, 555 N.E.2d 1379. I would

affirm the trial court's grant of summary judgment in favor of Lantis upon my view that Cole incurred the risk posed by the allegedly dangerous condition as a matter of law.