## A11A1180. BAILEY et al. v. COTTRELL, INC.
(721 SE2d 571)

ADAMS, Judge.

In this products liability case, appellants Steve Bailey and Laura Bailey appeal the trial court's order granting summary judgment under Indiana law to Cottrell, Inc. in the Baileys' suit to recover for injuries Steve Bailey sustained when he fell from the top level of a car-hauler/tractor-trailer rig. Because we find that the trial court erred in failing to apply Georgia law to the Baileys' claims, we reverse.

At all pertinent times, the Baileys were residents of Missouri. Cottrell, Inc. is a Georgia corporation engaged in the design, development and manufacture of car hauling equipment. Steve Bailey worked as a driver for a car-hauling company, Jack Cooper Transport ("JCT"), out of Wentzville, Missouri. The accident at issue occurred in Indiana on October 28, 2005, while Steve Bailey was loading pickup trucks onto his assigned car-hauler, a 1998 Cottrell rig owned by JCT. After Steve Bailey loaded an extended-cab pickup truck with a camper top onto an area called the "headramp," which is located on top of the tractor, he stepped out of the pickup to dismount from the headramp's upper level. Steve Bailey, who was wearing work gloves, stuck his right fingers into the top of the doorjamb above the

rear door of the pickup, while closing the pickup's driver door with his left hand. As Steve Bailey closed the door, the air from inside the pickup blew against his right hand, dislodging his fingers. Losing his grip, he fell backward onto the parking lot surface below. Steve Bailey asserts that he sustained traumatic injuries in the fall that have left him disabled.

The Baileys allege that the car-hauler Steve Bailey was using was designed, manufactured and sold by Cottrell with inadequate space for maneuvering and with no fall prevention devices, such as safety chains or grab bars on the rig's upper level, despite the fact that Cottrell knew that drivers like Steve Bailey would be required to load and unload automobiles from that area. Cottrell counters that Steve Bailey had knowledge of these supposed defects in the rig, as well as the knowledge of the specific risks of falling, and that he understood, appreciated and assumed these risks. The trial court, applying Indiana law, found that Steve Bailey voluntarily assumed the risk of working on the upper level of the car hauler and granted Cottrell's motion for summary judgment.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Campbell v. The Landings Assn.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

1. The Baileys first argue that the trial court erred in applying Indiana law to their claims. Although the injury occurred in Indiana and the Baileys acknowledge that Georgia generally applies lex loci delecti (the law of the place where the tort was committed), they assert that the trial court should have applied the public policy exception to the general rule. The Baileys contend that Indiana law violates Georgia public policy in two respects: (1) Indiana law does not allow a strict liability claim for a product design defect with a risk-utility test, while Georgia does; and (2) Indiana law, as applied by the trial court, eliminated the voluntariness element for an assumption of risk defense, which they contend contravenes Georgia public policy.

In Georgia, "[u]nder lex loci delicti, tort cases are governed by the substantive law of the state where the tort or wrong occurred — in this case, [Indiana]." (Footnote omitted.) *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 836 (1) (678 SE2d 489) (2009). See also *Dowis v. Mud Slingers*, 279 Ga. 808, 816 (621 SE2d 413) (2005) (reaffirming

lex loci delecti as the law in Georgia). But as the Baileys correctly note, Georgia recognizes a public policy exception to the rule of lex loci delecti.

> Even if an application [of the rule of lex loci delicti] renders the law of another state applicable, the forum, within constitutional limits, is not required to give the law of another state extra-territorial effect. That is only done as a matter of courtesy or comity, which will not be enforced if the law of the other state contravenes the public policy of the forum. See OCGA § 1-3-9; *Commercial Credit Plan v. Parker*, 152 Ga. App. 409 (263 SE2d 220) (1979).

*Fed. Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763, 765-766 (417 SE2d 671) (1992).

(a) Georgia law recognizes a product liability claim based upon strict liability against "those actively involved in the design, specifications, or formulation of a defective final product or of a defective component part which failed during use of a product and caused injury." (Citation omitted.) *Davenport v. Cummins Alabama, Inc.*, 284 Ga. App. 666, 671 (1) (644 SE2d 503) (2007). See OCGA § 51-1-11. Indiana law, however, does not recognize a strict liability claim for design defects:

> The Indiana Product Liability Act generally imposes strict liability for physical harm caused by a product in an unreasonably dangerous defective condition. Ind. Code § 34-20-2-1. For actions based on an alleged product design defect, however, the Act departs from strict liability and specifies a different standard of proof: "(T)he party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product." Ind. Code § 34-20-2-2.

*TRW Vehicle Safety Systems v. Moore*, 936 NE2d 201, 209 (1) (Ind. Sup. 2010) (declining to expand the statutory standard of care for product liability claims alleging a design defect). Thus, Indiana only recognizes a negligent design defect claim. Id. at 214 (5). The issue before us, therefore, is whether this distinction in Indiana law violates Georgia public policy. We conclude that it does.

In *Alexander v. Gen. Motors Corp.*, 267 Ga. 339 (478 SE2d 123) (1996), "Alexander was injured while driving in Virginia when the driver's seat of his General Motors ["GM"] vehicle, purchased new in Georgia, failed in a collision and caused him to be ejected from the vehicle." The trial court, applying Virginia's substantive law under

lex loci delecti, dismissed Alexander's strict liability claims because the State of Virginia did not recognize strict liability. This Court affirmed the trial court's application of Virginia law. *Alexander v. Gen. Motors Corp.*, 219 Ga. App. 660 (466 SE2d 607) (1995). But the Supreme Court reversed, holding that Virginia law contravened the public policy underlying OCGA § 51-1-11, which "was intended to protect those who are injured by defective products placed in the stream of commerce in this state" and that Alexander was entitled to have Georgia law applied to his claims against GM. *Alexander v. Gen. Motors Corp.*, 267 Ga. at 340-341.

Although Indiana recognizes strict liability for manufacturing claims, its failure to recognize a strict liability claim for design defects presents a substantive legal difference. A claim of negligence in an Indiana defective design product liability case differs from a strict liability claim in Georgia in that Georgia has specifically adopted the risk-utility test for determining strict liability as to such claims, while the State of Indiana has specifically rejected this test in favor of a common law negligence analysis. Compare *Banks v. ICI Americas*, 264 Ga. 732, 734-735 (450 SE2d 671) (1994) (adopting risk-utility analysis set out in Preliminary Draft No. 1 (April 20, 1993) Restatement (Third) of Torts: Products Liability, § 101, Reporters' Notes to Comment G) with *TRW Vehicle Safety Systems v. Moore*, 936 NE2d at 209, n. 2 (rejecting risk-utility test under Restatement (Third) of Torts: Products Liability § 2(b) (1997)). This is not a distinction without a difference. The application of the risk-utility test in Georgia allows the factfinder to consider a number of factors, *Banks,* 264 Ga. at 736 (1), n. 6, an approach that the Supreme Court of Indiana has rejected. Although the Supreme Court of Georgia recognized in *Banks* that the risk-utility analysis for design defect claims overlaps to a certain extent with a negligence analysis, the Court also stated that "we cannot agree that the use of negligence principles to determine whether the design of a product was 'defective' necessarily obliterates under every conceivable factual scenario the distinction Georgia law has long recognized between negligence and strict liability theories of liability." (Citations omitted.) Id. at 735, n. 3. And since *Banks*, this Court has reiterated that Georgia's strict liability law focuses "not on whether the manufacturer negligently failed to use due care but on whether the marketed product was defective"[1] and has "continued to honor" the

---

[1] The opinion in *S K Hand Tool Corp. v. Lowman*, 223 Ga. App. 712, 714 (479 SE2d 103) (1996), cited *Alexander v. Gen. Motors Corp.*, 219 Ga. App. 660 (466 SE2d 607) (1995), for this proposition. The *Alexander* case in turn cited "Maleski, Ga. Products Liability (2d ed.), §§ 2-2, 2-3; *Banks v. ICI Americas,* 264 Ga. 732 (450 SE2d 671) (1994) (focusing on a risk utility analysis to determine whether a product was defectively designed)." Although the Court of

distinction between negligence and strict liability for design defect claims. (Citations omitted.) *S K Hand Tool Corp. v. Lowman*, 223 Ga. App. 712, 715 (479 SE2d 103) (1996).

This comparison demonstrates that Indiana law and Georgia law are sufficiently dissimilar that applying Indiana law in this case would contravene the public policy of this State as expressed in OCGA § 51-1-11, and the Baileys are entitled to have Georgia law, including Georgia law regarding any defenses to such a claim, e.g., assumption of risk, applied to their claims against Cottrell. See *Alexander v. Gen. Motors Corp.*, 267 Ga. at 340.

(b) Cottrell argues, however, that the Baileys failed to preserve this public policy argument for appeal, because they did not brief it in connection with the parties' motions for summary judgment. Cottrell is correct that "absent special circumstances,[2] an appellate court need not consider arguments raised for the first time on appeal" in connection with a motion for summary judgment. (Footnotes omitted.) *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002). Nevertheless, we find that the Baileys properly preserved the issue for appellate review in their oral argument at the hearing on Cottrell's motion for summary judgment.

Following a conference with the trial court, the Baileys filed an expedited motion for summary judgment seeking a determination that Georgia law, not Indiana law, applied to their claims. They asserted two bases for this motion: (1) the untimeliness of Cottrell's notice of intent to rely on Indiana law and (2) their assertion that Indiana substantive law would apply Georgia law to the claims in this case. The motion further stated:

> Should this motion be granted it would obviate the need for the Court and parties to delve into the details of Indiana tort law that Defendants seek to apply. Consequently, Plaintiffs do not waive any arguments that Indiana law does not apply on a basis that involves comparing the particular points of Indiana and Georgia tort and damages law; for example, the argument that Indiana law violate[s] the public policy of Georgia.

---

Appeals' opinion in *Alexander* was reversed on other grounds in *Alexander v. Gen. Motors Corp.*, 267 Ga. at 340, that reversal did not undermine the validity of this analysis of strict liability law in Georgia.

[2] The Supreme Court noted that "[s]pecial circumstances could include 'a jurisdictional challenge, a claim of sovereign immunity, a serious issue of public policy, a change in the law, or (an) error that works manifest injustice.' See 19 *Moore's Federal Practice*, sec 205.05[2] at 205-58 (Matthew Bender 3d ed.)." *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2), n. 10 (573 SE2d 389) (2002).

Thus, the Baileys did not raise any public policy arguments in connection with their own summary judgment motion, but indicated their intention to raise them in opposition to any arguments based upon Indiana law. The trial court subsequently ruled that Cottrell's notice of intent was timely and that Indiana law applied, but did not explicitly deny the Baileys' expedited motion for summary judgment.

Also pending at the time of the Baileys' motion was Cottrell's motion for summary judgment based upon Indiana law. In opposing this motion, the Baileys argued that Cottrell's asserted defenses based upon an "open and obvious" defect and assumption of risk, as Cottrell interpreted Indiana law, would contravene Georgia public policy. The Baileys did not, however, brief any argument that Indiana's failure to recognize a strict liability defective design claim contravened Georgia's public policy. Nevertheless, at the summary judgment hearing, the Baileys' counsel raised what he described as a "monkey wrench" argument that Indiana's negligence only approach to defective design claims "runs afoul of Georgia public policy," citing the Supreme Court of Georgia's opinion in *Alexander v. Gen. Motors Corp.*, supra. This argument was sufficient to preserve the issue for our review. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. at 829 (2), n. 11 (contemplating that arguments raised for the first time at a summary judgment hearing would be subject to appellate review by indicating that in such a circumstance, a party should consider filing a transcript or a stipulation under OCGA § 5-6-41 (i) as part of the appellate record); *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 911 (2) (600 SE2d 841) (2004) (considering argument on appeal first raised at hearing on motion for summary judgment).

Therefore, because the trial court erred in applying Indiana law, which contravenes Georgia public policy, we reverse the trial court's order granting Cottrell's motion for summary judgment.

2. Given our holding in Division 1 above, we need not consider the Baileys' remaining arguments.

*Judgment reversed. Barnes, P. J., concurs. Blackwell, J., concurs specially.*

BLACKWELL, Judge, concurring specially.

I do not agree with the holding of the majority that the court below should have applied Georgia law in this case, but I do agree that the judgment below ought to be reversed, and for that reason, I specially concur. As to whether Georgia or Indiana law applies, I am unconvinced that the law of the two states is so "radically dissimilar," see *Alexander v. Gen. Motors Corp.*, 267 Ga. 339, 340 (478 SE2d 123) (1996), that public policy compels the application of Georgia law in this case. Under Indiana law, a defective design claim requires an

assessment of whether the manufacturer "exercise[d] reasonable care under the circumstances in designing the product." *TRW Vehicle Safety Systems, Inc. v. Moore*, 936 NE2d 201, 209 (1) (Ind. 2010). Under Georgia law, on the other hand, a defective design claim involves an assessment of whether the manufacturer "acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk." *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 734 (1) (450 SE2d 671) (1994). These standards do not seem "radically dissimilar" to me.[3] Our Supreme Court has cautioned, of course, that the adoption of a reasonableness standard for defective design claims does not "*necessarily* obliterate[ ] under *every conceivable factual scenario* the distinction Georgia law has long recognized between negligence and strict liability theories of liability," id. at 735 (1), n. 3 (emphasis supplied), but neither the Baileys nor the majority persuades me that this case is one in which the differences, if any, between the Georgia reasonableness standard and the Indiana reasonableness standard are meaningful ones. At bottom, the conflict-of-laws analysis of the majority seems to rest mostly upon the fact that the Georgia courts sometimes speak of "strict liability" for defective design claims, notwithstanding that the Georgia standard for such claims is one of objective reasonableness. Accordingly, I am unconvinced that public policy requires the application of Georgia law in this case.

Nevertheless, I think the court below erred when it awarded summary judgment to Cottrell based on the Indiana doctrine of incurred risk. On appeal, the Baileys argue that, even if Indiana law applies, incurred risk requires a voluntary act, and when an employee is required to perform a specific act as a part of his employment, it is for a jury to decide whether his performance of the act is voluntary. Cottrell responds that an amendment of the Indiana Product Liability Act did away with the voluntariness requirement and that, in any event, any question of voluntariness in this case is not one for the jury. I find the arguments of the Baileys on these points persuasive.

At one time, the Indiana Product Liability Act provided that it is a defense to a product liability claim that "the user or consumer . . . knew of the defect and was aware of the danger and nevertheless

---

[3] The Georgia standard is more specific, in the sense that the Supreme Court of Georgia has identified specific factors that must be considered in assessing "the reasonableness of a manufacturer's decision-making process." *Banks*, 264 Ga. at 735 (1), n. 6, 736. The Supreme Court has cautioned, however, that its identification of specific relevant factors is not a comprehensive or exhaustive one. See id.

proceeded unreasonably to make use of the product and was injured by it," see *Cole v. Lantis Corp.*, 714 NE2d 194, 200 (II) (A), n. 4 (Ind. App. 1999), and under this version of the Act, the Indiana courts consistently held that this incurred-risk defense requires that the use of the product be voluntary. See, e.g., *Moore v. Sitzmark Corp.*, 555 NE2d 1305, 1308 (I) (B) (Ind. App. 1990); *DeVoe Chevrolet-Cadillac v. Cartwright*, 526 NE2d 1237, 1239 (Ind. App. 1988). Later, the Act was amended, and the word "unreasonably" was removed. See Ind. Code § 34-20-6-3. Cottrell argues that this amendment effectively did away with the voluntariness element of incurred risk, but I am not persuaded. Reasonableness and voluntariness are quite different things, the former being an objective standard, and the latter being a subjective one. Moreover, at least two Indiana appellate judges have said that voluntariness remains a requirement of incurred risk, even under the amended Act. See *Vaughn v. Daniels Co.*, 777 NE2d 1110, 1130-1131 (IV) (B) (Ind. App. 2002), vacated and reversed on other grounds, 841 NE2d 1133 (Ind. 2006).[4] No one cites any other authority on this question, and I must conclude, therefore, that voluntariness remains a requirement of incurred risk under Indiana law.

Under Indiana law, when an employee is required to perform a specific act as a part of his employment, his performance of that act may be rendered involuntary by the circumstances of his employment. See *Cole*, 714 NE2d at 200 (II) (A); see also *Schooley v. Ingersoll Rand, Inc.*, 631 NE2d 932, 940 (IV) (Ind. App. 1994). In this case, there is evidence that Steve Bailey was required in the course of his employment to go upon the upper level of the car hauler that he drove, that if he failed to do so, he would have lost his job, and that he needed the job to support his family. In cases like this, the Indiana courts have said that whether the employee voluntarily incurred the risk is for the jury to decide. See, e.g., *Cole*, 714 NE2d at 200 (II) (A); *Schooley*, 631 NE2d at 940 (IV); *Richardson v. Marrell's, Inc.*, 539 NE2d 485, 487 (Ind. App. 1989); *Meadowlark Farms, Inc. v. Warken*, 376 NE2d 122, 133-134 (Ind. App. 1978).[5] For these reasons, I think it was error to award summary judgment to Cottrell based on the doctrine of incurred risk under Indiana law, and I agree with the

---

[4] Cottrell says that we should not look to the decision of the Indiana Court of Appeals in *Vaughn* because it was vacated by the Indiana Supreme Court. No one disputes that *Vaughn* is not a binding precedent in Indiana. But the Indiana Supreme Court decided the case on another ground, and it did not even discuss voluntariness. Especially in the absence of other authority, I think we still can consider what two Indiana appellate judges have said about the subject, even if their Supreme Court later reversed them on other grounds.

[5] To the extent that *Ferguson v. Modern Farm Systems, Inc.*, 555 NE2d 1379 (Ind. App. 1990), is inconsistent with the cases cited above, it appears to be an outlier, and I would follow the greater weight of authority.

majority that we must reverse the judgment below.

DECIDED NOVEMBER 29, 2011 —
RECONSIDERATION DENIED DECEMBER 16, 2011.

*Garland, Samuel & Loeb, David E. Tuszynski*, for appellants.
*Hulsey, Oliver & Mahar, Abbott S. Hayes, Jr., Smith, Gambrell & Russell, Melanie S. Stone*, for appellee.